747 P.2d 613

**STATE of Arizona, Appellee,**

v.

**Ronnie Dale WHITE, Appellant.**

**1 CA–CR 10311.**

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 10, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

Landau & Hamilton by Lynn Hamilton, Chandler, for appellant.

## OPINION

GRANT, Presiding Judge.

Appellant Ronnie Dale White (defendant) was charged by information with driving while under the influence, in violation of A.R.S. §§ 28–692(A) and 28–692(B), while his driver's license was suspended, both class 5 felonies. The state filed an allegation of dangerousness. The matter was tried to a jury, which found defendant guilty on both counts, but did not find the crimes dangerous. The court sentenced defendant to two years on each count, the sentences to run concurrently. Defendant timely filed a notice of appeal.

The facts are as follows, viewed in a light most favorable to sustaining the convictions. *E.g., State v. Olivas,* 119 Ariz. 22, 579 P.2d 60 (App.1978). Defendant was at a bar called the 480 Outlaws Club in Chandler, Arizona, on the night of August 9, 1985. At the end of the evening, he agreed to drive Loretta Grisham, Cheryl Grant, and one "Brian" home. Brian was dropped off. As defendant proceeded to drive Ms. Grant home, he was stopped by Officer Joel Jerale while going north on McQueen Road.

Officer Jerale had seen the defendant following another vehicle too closely and had turned around to follow the defendant. He then saw defendant do the "classic weave," ostensibly a sign of a drunk driver. Jerale stopped the defendant, and when he learned that defendant's license had been suspended, called for a backup; Officer Greg Lair responded. Jerale administered field sobriety tests to defendant while Lair watched. Based on defendant's performance on the tests and his driving, Jerale arrested defendant. Grisham was allowed to drive the car home. At the station, the field tests were readministered and videotaped. Thereafter, Jerale observed defendant for twenty minutes to make sure defendant did not ingest any matter or belch stomach contents into his mouth. Jerale then administered a breath alcohol content (BAC) test to defendant with the Intoxilyzer 5000 machine used by the Chandler Police Department. The first test was aborted, and a second test followed. The results indicated a BAC of .234.

Defendant had admitted to the police that his license had been suspended. The suspension of license was stipulated to at trial.

■ The first argument raised by defendant is that the trial court erred by refusing to grant a pretrial motion to dismiss the allegation of dangerousness. The state argues that since the jury found the crimes to be nondangerous, the point is moot. Defendant, however, urges that the mere allegation of dangerousness prejudiced defendant because it "conjured up images of a Hell's Angel speeding through

a school zone rather than a middle-aged farmer driving home a little under the speed limit on a lightly traveled road in the middle of rural Maricopa County." We disagree.

The Arizona appellate courts have not yet ruled whether the question of dangerousness in a D.W.I. may be dismissed as a matter of law prior to trial, or whether it is always a question for the jury.[1] We need not decide the issue, however, because it is clear, under the facts of this case, that defendant was not prejudiced by the allegation.

The jury, instructed not to reach a decision until it had heard all of the evidence, found the crime nondangerous. The jury was well aware that defendant was not a Hell's Angel. There was no prejudice from the allegation of dangerousness.

■ The second argument raised by defendant is that the charges should have been dismissed because pre-indictment delay was prejudicial. *See Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984). Defendant's motion for dismissal was denied prior to trial. Defendant concedes that *Hinson v. Coulter*, 150 Ariz. 306, 723 P.2d 655 (1986) is not applicable to this case, but argues that it shows the Arizona Supreme Court's extreme concern about the effects of delay in DWI cases.

Defendant argues the delay prejudiced his case in three respects: (1) that if more timely charged, defendant could have discovered a copy of Officer Jerale's dispatch tape, which might have supported defendant's recollection as to his performance on the field sobriety tests; (2) defendant could have kept track of "Brian" and called him as a witness at trial; (3) defendant could have gone to a doctor after the arrest to get documentation for his ear infection, which arguably could have explained certain results in the sobriety tests both at the station and in the field.

We reject defendant's claims. Before *Hinson,* to prove that pre-indictment delay violated due process, the defendant had to prove that the prosecutor intended delay for tactical advantage or to harass defendant and that the defendant was actually and substantially prejudiced. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *State v. Torres,* 116 Ariz. 377, 569 P.2d 807 (1977) As to the first part of the test, when asked by the court why there was a delay, defense counsel offered her opinion that the county attorney did not adequately staff the DWI unit. The state's attorney agreed with this assessment and also noted the paperwork involved in getting proof of the two priors before proceeding with a felony DWI prosecution. Thus, defendant has completely failed to meet the first part of the test.

Moreover, defendant has not shown actual and substantial prejudice. As to the dispatch tape, Officer Jerale testified that the tape only runs as transmissions are put out on the radio. The record does not show the radio was on as defendant performed the field test. Moreover, the microphone must be activated to transmit even if the radio is on. Therefore, we doubt that the dispatch tape would have been of any help to defendant. In addition, defendant testified to the jury that he thought he did very well on the field tests.

Defendant's actions in not securing the evidence were not reasonable. Defendant knew he had two prior offenses and could be charged with felony DWI. Officer Jerale testified the Chandler police would keep the tape if requested to do so within thirty days after the incident. If defendant had been prudent, he would have obtained a copy of the tape.

As to "Brian," testimony indicated that he was leaving for the military shortly after the incident. Thus, even if the state had charged defendant more quickly, Brian would most likely have left the area, and

---

1. *State v. Venegas,* 137 Ariz. 171, 669 P.2d 604 (App.1983) held under the circumstances there the automobile qualified as a dangerous instrument. But in *State v. Woodall,* 155 Ariz. 1, 744 P.2d 732 (App.1987), the court cited *Venegas* for the proposition that "an automobile clearly constitutes a 'dangerous instrument.'" At 7, 744 P.2d at 738. The Arizona Supreme Court has accepted review of this issue in *State v. Orduno,* 1 CA–CR 10244 (Memorandum Decision filed 8/27/87), CR 87–0271–PR.

defendant would have faced the same problem of finding him. We do note that the defendant drove Brian "home" the night of the incident, presumably discovering where Brian lived. This would have been a starting point had defendant really wished to contact Brian. Furthermore, defendant has not made clear what Brian's testimony would have been or how it could have aided defendant. Brian was not present during the "weaving" or during the field test.

As to the effects of the ear infection, defendant told the officer about the infection. He also stated he had gone to the doctor a few days before. Defendant could have subpoenaed the same doctor to testify at trial to bolster his story. A post-incident examination by a doctor would have added little to the defense.

■ Defendant's next argument is that the police were required to inform defendant of his right to an independent blood test. We disagree. This court has recently held that there is no such requirement. *State v. Ramos*, 155 Ariz. 153, 745 P.2d 601 (App.1987). When the state conducts a test, it must preserve a sample for the defendant, if he requests it. *Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979). Here the state gave defendant a breathalyzer test, and he requested and received a breath sample. The thrust of *Baca* is to allow defendant to preserve evidence which may aid him. Here evidence was preserved for independent examination by the defendant, but he, for whatever reason, did not employ it in his defense. There was no duty on the part of the police to inform him that he had the right to an independent test.

■ Defendant's fourth argument is that the trial court erred in not directing a verdict as to the charge under A.R.S. § 28–692(B). Preliminarily, we reject the state's contention that defendant waived the argument by failing to renew his motion for directed verdict at the close of his case. We examine the sufficiency of the evidence as part of our fundamental error review. A.R.S. § 13–4035; *State v. Roberts*, 138 Ariz. 230, 673 P.2d 974 (App.1983).

Defendant's argument has two parts. The first is that the BAC reading was never admitted into evidence. This argument lacks a factual predicate. Specifically, the card which showed the results of the test (Exhibit 13) was admitted into evidence.

■ Defendant's main argument is that there should have been a directed verdict because there was no evidence relating the .234 reading at 1:30 a.m. back to the time defendant was last driving at about 12:30 a.m. We reject this argument. It had long been the law in Arizona that relation back evidence is not necessary to admit a BAC reading into evidence in a criminal case. *State v. Olivas*, 77 Ariz. 118, 267 P.2d 893 (1954); *State ex rel. Williams v. City Court*, 15 Ariz.App. 229, 487 P.2d 766 (1971). The defendant argues that our supreme court changed the law in *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1984), and now requires relation back.

The supreme court in *Fuenning* noted a Vermont holding "that expert evidence relating the test result to the time of the occurrence is necessary before the state can rely on a statutory presumption." 139 Ariz. at 598, 680 P.2d at 129 (citing *State v. Dacey*, 138 Vt. 491, 418 A.2d 856, 859 (1980)). But our supreme court did not adopt this holding. Rather, it stated:

> The issue of whether the state can carry its burden of proof by merely introducing the test results without other evidence is not presented here, nor do we decide that issue.

139 Ariz. at 599, 680 P.2d at 130. Thus, the supreme court has not instituted a requirement of expert relation back evidence. It has simply identified a question as to whether such evidence is required.

We need not address that question in the present case, for the reason that the state did in fact introduce relation back evidence.

The state's expert, Chester Flaxmeyer, provided evidence that, given the .234 reading taken at the station, in order to have had a BAC of less than .10 when stopped, the defendant would have to have had six to seven beers in his stomach which had

not yet gotten into his bloodstream. Thus, evidence would have to have shown that defendant "chugalugged" six to seven beers shortly before he left the bar to have a .234 reading at the time of testing, but not to have had a BAC of at least .10 when stopped.

There is certainly no evidence in the record to support such a scenario. Both Grant and Grisham testified they had no question about letting defendant drive. Furthermore, Officer Jerale's testimony as to defendant's driving behavior, Jerale's and Lair's testimony regarding the sobriety tests, and the video-tape are all evidence corroborating the .234 reading and demonstrating that it was not a mistake. *Fuenning, supra.* We agree with *State v. Sutliff,* 97 Idaho 523, 547 P.2d 1128 (1976), that to require the state to show how much the defendant drank would present it with an intolerable burden, since such information is peculiarly within the knowledge of the defendant. 547 P.2d at 1130.

The trial court here did not instruct the jury that, in the absence of other evidence, the jury must accept the reading as conclusive. Rather it instructed:

> The fact that a breathalyser [sic] machine registered that defendant's blood alcohol is .10 or higher *does not conclusively establish that the defendant was driving under the influence of alcohol.*

> The defendant is not required to rebut or disprove the machine's test results. *You may accept or reject the test results of the machine.*

(emphasis added) Thus, no mandatory presumption was given to the jury; rather, the jury was permitted to make the inference that the test result showed intoxication at the time of the arrest. This is in accord with *Olivas, State ex rel. Williams,* and *Fuenning.* The BAC result was certainly rationally related to whether defendant was driving under the influence or with a BAC of .10 or higher. *See State v. Spoon,* 137 Ariz. 105, 669 P.2d 83 (1983). Flaxmeyer's testimony made evidence of defendant's blood alcohol at the time he was driving unnecessary.

The standard of review on this appeal is whether there is substantial evidence to support the jury's verdict. *State v. Fristoe,* 135 Ariz. 25, 32, 658 P.2d 825, 832 (1983); *see also State v. Piatt,* 132 Ariz. 145, 644 P.2d 881 (1981). Reasonable inferences must be resolved in favor of the state, *State v. Mincey,* 141 Ariz. 425, 687 P.2d 1180, 1188 (1980), *cert. denied* 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984), and any seeming conflicts of evidence must also be resolved against the defendant. *State v. Girdler,* 138 Ariz. 482, 675 P.2d 1301 (1983), *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984).

We have discussed the relationship of evidentiary showings to the verdict, and are satisfied with the trial proceedings in that regard. Flaxmeyer provided relation back evidence. Evidently the jury believed the prosecution had met its burden of proof, *Fuenning* 139 Ariz. at 598, 680 P.2d at 129, and since there was substantial evidence to support that verdict, we will not disturb it on this point.[2]

Defendant's fifth argument is that the trial court erred in allowing Officers Jerale and Lair to give opinions that the defendant was intoxicated. Officer Jerale testified, over objection, as to his opinion of defendant's performance on the five parts of the field sobriety test. Counsel asked if during the course of the test, defendant

---

2. We note the "rebuttal presumption" analysis of *Logan v. Brown,* 151 Ariz. 96, 725 P.2d 1130 (App.1986), which created a presumption that the alcohol content of a driver's blood at the time of testing would be at least as high as his or her BAC at the time of arrest or accident. While *Logan* would lead us to the same result we reach here, we do not rely on its analysis in our review. Other courts have reached results similar to ours by likewise examining the sufficiency of the evidence before the jury. *See, e.g. State v. Vick,* 104 Wis.2d 678, 312 N.W.2d 489 (1981); *Commonwealth v. Arizini,* 277 Pa.Super. 27, 419 A.2d 643 (1980); *Cf. People v. Lachman,* 23 Cal.App.3d 1094, 100 Cal.Rptr. 710 (1972) (since evidence was ample for conviction, no otherwise permissible presumptions need be relied upon in that conviction); *Ring v. Taylor,* 141 Ariz. 56, 685 P.2d 121 (App.1984) (another panel of this court held that if evidence was sufficient to show a certain BAC at time of arrest, jury instruction and consideration of that issue was proper).

exhibited symptoms of intoxication. Jerale responded, "Yes." He rated defendant's overall symptoms of intoxication as a "6 or 7" (on a scale of one to ten). Defendant moved for a mistrial, which was denied. Later, toward the end of Jerale's testimony, the state asked him to rate, on a scale of one to ten, defendant's symptoms of intoxication. He answered "7." When asked to explain further, the objection to the question was sustained.

Later, Officer Lair was asked if he had an opinion as to whether defendant exhibited the symptoms of intoxication when performing the field tests. His opinion was that Mr. White was "under the influence." Defendant's objection was sustained, and defendant's motion for a mistrial was taken under advisement but never ruled upon. On cross-examination, defense counsel asked:

> Q. And yet you're here today telling us that you had an impression that my client was definitely under the influence?
>
> A. I believe at the time of our meeting I told both of you that I do not remember any specific parts of the tests, but my general impression was what you had just said.

We agree with defendant's argument that the officer's statements were impermissible. *Fuenning* cautioned that testimony which parrots the words of the statute moves from a permissible opinion to an impermissible opinion of guilt or innocence. *Fuenning*'s supplemental opinion stated that, "When, in a DWI prosecution, *the officer is asked whether the defendant was driving while intoxicated,* the witness is actually being asked his opinion of whether the defendant was guilty." 139 Ariz. at 605, 680 P.2d at 131 (emphasis added). However, *Fuenning* also said that it would be proper to ask whether defendant displayed symptoms of intoxication or whether defendant's conduct seemed influenced by alcohol. *Id.* We must determine whether the officers' statements were prejudicial.

Here, no officer was asked whether defendant was driving while intoxicated. Jerale was asked about the defendant's symptoms of intoxication, his performance on each part of the test, and an overall rating of defendant's intoxication. As to Lair's testimony, the question was about symptoms, and the nonresponsive answer was that the defendant was "under the influence."

In *State v. Bojorquez,* 145 Ariz. 501, 702 P.2d 1346 (App.1985), this court stated that the trial court is in the best position to assess all factors in deciding whether to admit particular questions regarding intoxication. Here, the trial court exercised discretion in deeming it sufficient to sustain the defendant's objection to such testimony without granting the further motion for mistrial. Accordingly, we find no error in the trial court's rulings on this subject.

Defendant also argues that neither officer was qualified as an expert. The officers were not testifying as experts, but were giving opinions as to what they personally observed, which any witness may do. *See* Rule 704, Arizona Rules of Evidence.

■ Defendant's sixth argument is that there was no proper foundation for the admission of the BAC result because there was no evidence either that the machine had ever been calibrated or that it was calibrated as often as required by Health Service regulations. A.R.S. § 28–692.03, which sets forth the so-called "short-cut" method for laying foundation for a BAC result, does not specifically address calibration, but subsection (A)(5) requires evidence that "[t]he device used to conduct the test was in proper operating condition...." A.C.R.R. R9–14–415(A)(3) provides that:

> *Calibration checks* of breath testing devices shall be performed under normal operating conditions and at an interval of at least every 100 subject tests or monthly, whichever is the greater period of time.... (emphasis added)

Officer Ronald Slusser testified that he conducted calibration checks on the machine on July 19, 1985, and August 19, 1985, and that the machine was within the tolerances required by the Department of Health Services.

Under questioning by defense counsel, Officer Slusser testified he did not calibrate the machine in the sense that he did not adjust it himself. He testified he checked the calibration, but that if it was outside the tolerance range, the machine was sent out for service.

Thus, defendant may be correct in stating that the machine had not been "calibrated" by the Chandler Police Department. But it was not calibrated because it was within proper limits. In other words, it did not need fixing because it was not broken. Thus, the foundational prerequisite was not lacking, and the trial court properly admitted evidence of the BAC test result rendered by the machine.

■ Defendant's next argument is that the prosecutor deliberately insinuated that there had been an accident in order to prejudice the jury when in fact there had been no accident. The prosecutor asked the state's expert witness, Chester Flaxmeyer, whether he had opinions regarding the probability of an auto accident occurring at varying levels of intoxication. Defendant's objection was sustained. An objection to a similar question was sustained with the court adding, "Just doesn't seem to me to be an accident involved in this case." When the prosecutor persisted, saying he was trying to prove dangerousness, the court stated, "Isn't that a good argument to the jury at the end of the case but maybe not now?" The defense moved for a mistrial, which the court denied.

We find no error here. The judge stated to the jury that there was no accident, and the jury was well aware under the facts of the case that there had been no accident. The trial court sustained all of the objections that defense counsel made regarding this subject. We find no abuse of discretion in the trial court's denial of defendant's motions for mistrial.

■ Defendant's eighth argument is that the trial court erred in admitting Exhibits 2 and 8, in violation of Rule 803(8), Arizona Rules of Evidence. Exhibit 2 is the standardized field sobriety test worksheet for the Chandler Police Department. Officer Jerale made several notes on the worksheet regarding the field tests administered to defendant. Exhibit 8 is a script for giving the videotaped test and copy of the form used at the time sobriety tests are videotaped in the Chandler police station. Exhibit 8 has no notes by Jerale regarding his observations. Therefore, Rule 803(8) is not applicable to Exhibit 8, and we turn our scrutiny to Exhibit 2.

The state concedes that Exhibit 2 was admitted in violation of Rule 803(8), but argues that its admission was harmless because it was cumulative to Officer Jerale's testimony. We agree. The exhibit was used to refresh the officer's testimony, and he testified regarding the administration of the field test in great detail. Defendant fully exercised his right to cross-examine Jerale. Moreover, the officer's opinion regarding defendant's appearance of intoxication was amply corroborated by the BAC test reading of .234, by the videotape and by Officer Lair's testimony. Thus, the erroneous admission of Exhibit 2 constitutes harmless error. *E.g., State v. Cocio*, 147 Ariz. 277, 709 P.2d 1336 (1985).

■ The last argument raised by defendant is that the court abused its discretion in denying defendant's motion for mistrial based on one of the jurors having been fired by her employer just prior to jury deliberations. Defendant moved for mistrial, feeling the jury might hold the firing against defendant. The court denied the motion.

The only other portion of the record relating to this matter is a statement by the prosecution at sentencing that the juror had her job back. The employer told the county attorney the employee was not fired, but that the employer had required a temporary replacement.

In a criminal prosecution, a mistrial is not required where interference with the jury is not shown to have prejudiced the defendant. In *State v. Jordan*, 83 Ariz. 248, 320 P.2d 446 (1958), *cert. denied*, 357 U.S. 922, 78 S.Ct. 1364, 2 L.Ed.2d 1367 (1958), a juror disclosed that her daughter had received certain veiled threats by telephone from unknown parties. The juror

alleged she was not worried by the calls and could decide the case under the court's instructions and the evidence. The Arizona Supreme Court found it significant that the defendant presented no affidavits or testimony in support of his motion for new trial. The court held that defendant failed to show any prejudice against him by reason of the alleged threats and that the trial court had not erred in denying the motion for new trial.

Here, the record is certainly insufficient to show that the firing had an effect on the juror, causing her to favor either one party or the other. In fact, the juror has not even been identified in the record. There is no evidence she was "fired" to punish her or encourage her to vote one way or the other, but rather "fired" because the employer was upset at the length of the trial. Once "fired," any motivation the juror had to rush into a verdict to get back to her job is doubtful at best.

We can only speculate as to which party the juror might hold responsible for her employer's actions. Therefore, we find the trial court did not err in denying the motion for mistrial, because no prejudice has been shown.

Pursuant to A.R.S. § 13–4035, we have reviewed the record for fundamental error, and have found none. For the above reasons, the convictions and sentences are affirmed.

CONTRERAS and FIDEL, JJ., concur.