777 P.2d 693

**Ned Ramon ROBINSON,
Petitioner–Appellee,**

v.

**Lee A. PRINS, Arizona Department of
Transportation, Respondent–Appellant.**

**No. 1 CA–CV 88–038.**

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 17, 1989.

Review Granted April 25, 1989.

Robert G. Swan, Phoenix, for petitioner-appellee.

Robert K. Corbin, Atty. Gen. by Joe Acosta, Jr., Asst. Atty. Gen., Phoenix, for respondent-appellant.

## OPINION

BROOKS, Presiding Judge.

The state has appealed from a superior court judgment that set aside an administrative suspension of appellee Ned Ramon Robinson's driver's license for refusal to submit to a breath test under A.R.S. § 28–691(E). Although Robinson verbally agreed to submit to an intoxilyzer test, and nothing about his behavior suggested that his cooperation was less than complete, machine printouts characterized the samples that he provided as "deficient." The issue on appeal is whether, under these circumstances, the state was required to establish that the officer administering the test was qualified to do so and that the machine was in proper working order.

The facts are undisputed. On March 25, 1987, Department of Public Safety (DPS) officer M. D. Bonin stopped Robinson because he was speeding and weaving between lanes. The officer detected an odor of alcohol and noted that Robinson's eyes were bloodshot and watery and that his speech was slurred. After performing unsatisfactorily on field sobriety tests, Robinson was arrested and taken to a DPS station.

At the station, Officer Bonin advised Robinson of the implied consent law, and Robinson agreed to submit to an intoxilyzer test. On Robinson's first attempt, the machine registered a blood alcohol level of .132%, but the readout indicated "deficient sample." Robinson's second attempt yielded a reading of .000%, and the machine again characterized the sample as deficient. Based on Robinson's failure to provide a sufficient sample, Bonin filed an "officer's report of refusal to take breath test" to support the suspension of Robinson's license.

Robinson requested a hearing before the department of transportation. The only contested issue was whether he had refused to submit to the breath test. Robinson maintained that he had in fact agreed to take the test. He explained that he had been confident that the result would be below the legal limit. He claimed that he had tried to take the test, but the machine

was not operating properly. Describing his attempts to provide a sufficient sample, he stated that blowing into the machine was like trying "to blow up a baloon [sic] that you just could not get started." He reported that the officer had blown into the machine and that he had had to blow quite hard to activate it.

Officer Bonin reported nothing about Robinson's overt behavior that might suggest that he had been attempting to avoid the test or sabotage the results. Proof of Robinson's refusal rested entirely upon the validity of the "deficient sample" readings on the machine printouts.

The officer had no independent recollection of blowing into the machine in order to demonstrate to Robinson that it was working properly, but acknowledged that he usually did so when someone blew an insufficient sample on their first try. He explained that if the machine had failed to register an appropriate reading on him, he would not have made a second attempt with Robinson. He testified that he had observed Robinson for the minimum period before giving him the test and, further, that in administering the test, he had followed the intoxilyzer checklist. He noted that the machine had been calibrated on March 17, 1987, eight days before the incident. No other evidence was offered to show that the machine was in proper operating condition at a time before or after the tests were administered to Robinson. Furthermore, no evidence was offered to show that Officer Bonin was qualified to administer an intoxilyzer test.

The hearing officer found that Robinson had refused to take the test and ordered that his license be suspended for one year. See A.R.S. § 28–691(B) (1988 Supplemental Pamphlet). Robinson moved for a rehearing on several grounds, including insufficiency of the evidence offered to support a finding of refusal absent proof that the officer administering the test was qualified to do so and that the machine had been checked after March 25 to establish that it was in proper working order. The motion for rehearing was denied, and Robinson appealed to the superior court. After con-

cluding that the foregoing evidence was relevant and foundational, the superior court found insufficient evidence to support the hearing officer's decision and, accordingly, reversed it.

On appeal to this court, the state asserts that the evidence presented to the hearing officer was sufficient to make a prima facie case for refusal. The state therefore argues that in order to prevail at the hearing, Robinson was obligated to demonstrate that the machine was not working properly. In any event, the state continues, evidence that the machine had accepted the sample provided by Officer Bonin was sufficient to demonstrate that the machine was operating properly. Furthermore, relying on *Halloway v. Martin*, 143 Ariz. 311, 693 P.2d 966 (App.1984), the state argues that neither the officer's certification nor the accuracy of the testing device is an issue at an implied consent hearing. In all respects, we disagree.

### SUFFICIENCY OF THE EVIDENCE

In an appeal to the superior court from an administrative decision under the implied consent law, the scope of review is limited to a consideration of whether the hearing officer's action was illegal, arbitrary, capricious, or an abuse of discretion. *Ontiveros v. Arizona Department of Transportation*, 151 Ariz. 542, 543, 729 P.2d 346, 347 (App.1986). The hearing officer's decision will be set aside only if it is not supported by competent evidence. *Id.*

The Arizona Supreme Court has defined refusal under the implied consent law as follows:

It is the opinion of this court that a refusal to submit to the test occurs where the conduct of the arrested motorist is such that a reasonable person in the officer's position would be justified in believing that such motorist was capable of refusal and manifested an unwillingness to submit to the test.

*Campbell v. Superior Court*, 106 Ariz. 542, 553, 479 P.2d 685, 696 (1971).

Refusal may, of course, be verbal. *See, e.g., Halloway*. Furthermore, as the state correctly notes, evidence that a licensee verbally refused to submit to a breath test

is sufficient, even absent proof that the test, if performed, would have been administered by qualified personnel in accordance with methods prescribed by the department of health services. *Id.*, 143 Ariz. at 313, 693 P.2d at 968. In that context, we observed that "the validity of a test refused is not relevant in determining suspension under the implied consent statute. That issue does not arise until a test is *given* and the results are offered as evidence." *Id.* (emphasis in original).

The instant case does not concern verbal refusal, however, and must be distinguished from *Halloway* on that basis. There is no question but that Robinson verbally agreed to submit to the breath test. Moreover, the test was given, and the result—"deficient sample"—was offered as evidence.

On the other hand, a refusal need not be verbal; conduct constituting less than cooperation by the licensee is tantamount to a refusal. *Ontiveros*, 151 Ariz. at 543, 729 P.2d at 347. In *Ontiveros*, the subject deposited chewing gum on the mouthpiece of the testing device, blew "little puffs of air," and otherwise displayed an attitude of "gamesmanship" rather than cooperation. *Id.* Similarly, in *Kuznicki v. Arizona Department of Transportation*, 152 Ariz. 381, 732 P.2d 1119 (App.1986), the subject, having been given five opportunities to take the test, persisted in blowing out of the sides of his mouth despite instructions not to do so. *See also Geer v. Ordway*, 156 Ariz. 588, 754 P.2d 315 (App.1987) (asked eleven times if he would take the test, subject persisted in responding with irrelevant questions and comments).

In the case before us, however, no evidence was presented to suggest that Robinson was uncooperative in any way. In sharp contrast to the cases described above, the finding of Robinson's refusal rested entirely on the presumed validity of machine printouts indicating that he had provided "deficient" breath samples.

We do not mean to imply that such independent evidence of non-cooperation is always necessary. In its absence, however, a finding of refusal cannot rest solely on test results that do not meet statutory foundational requirements. We therefore agree with the superior court's conclusion that the evidence of refusal was insufficient.

The implied consent statute provides:

Any person who operates a motor vehicle within this state gives consent, *subject to the provisions of A.R.S. § 28–692*, to a test or tests of his blood, breath, or urine for the purpose of determining the alcohol or drug content of his blood if arrested for any offense arising out of acts alleged to have been committed in violation of this chapter while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs.

A.R.S. § 28–691(A) (emphasis added). Thus, the validity and admissibility of such test results in an implied consent hearing are conditioned upon compliance with the requirements of A.R.S. §§ 28–692(G)[1] and –692.03.[2] *See Fuenning v. Superior Court*, 139 Ariz. 590, 602, 680 P.2d 121, 133 (1983) ("test results will be 'valid' if 'per-

---

1. A.R.S. § 28–692(G) provides:
   Any analysis of a person's blood, urine, breath or other bodily substance is valid under the provisions of this section if it is performed according to methods approved by the department of health services and by a person possessing a valid permit issued by the department of health services for such purpose.

2. A.R.S. § 28–692.03(A) provides:
   A. The results of a breath test administered for the purpose of determining a person's blood alcohol level are admissible as evidence in any trial, action or proceeding for a violation of § 28–692 upon establishing the following foundational requirements:

   1. The test was performed using a quantitative breath testing device approved by the department of health services. A properly authenticated certification by the department of health services is sufficient to establish this requirement.
   2. The operator who conducted the test possessed a valid permit issued by the department of health services to operate the device used to conduct the test.
   3. An operator observed the person charged with the violation for twenty minutes immediately preceding the administration of the test.
   4. The operator who conducted the test followed an operational checklist approved by

formed according to methods approved by the department of health services' (A.R.S. § 28–692(G)), and thus will be 'admissible' when it is established that the agency has complied with the standards required by A.R.S. §§ 28–692.03(A) and the rules promulgated under subsection B.").

We hold that an intoxilyzer's "deficient sample" reading constitutes "results of a breath test," which may be admitted as evidence at an implied consent hearing only upon proof that the foundational requirements of A.R.S. § 28–692.03 have been met.[3] Because no other evidence supported the finding of refusal, the superior court correctly set aside the hearing officer's decision.

AFFIRMED.

CONTRERAS and KLEINSCHMIDT, JJ., concur.

the department of health services for the operation of the device used to conduct the test. The testimony of the operator is sufficient to establish this requirement.

5. The device used to conduct the test was in proper operating condition. Records of periodic maintenance which show that the device was in proper operating condition at a time before and after the test are admissible in any proceeding as prima facie evidence that the device was in proper operating condition at the time of the test. Such records are public records.

3. It is undisputed that the record fails to demonstrate that Officer Bonin possessed a valid permit to operate an intoxilyzer. *See* A.R.S. § 28–692.03(A)(2). Therefore, we need not consider the state's argument that evidence indicating that the officer was able to produce an appropriate reading with his own breath sample was sufficient to demonstrate that the machine was in proper operating condition.