888 P.2d 1389

**STATE of Arizona, ex rel., Roderick G. McDOUGALL, Phoenix City Attorney, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Joseph D. Howe, a judge thereof, Respondent Judge,**

**Daniel P. STOCK, Real Party in Interest.**

No. 1 CA–SA 94–0329.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 24, 1995.

that the state must demonstrate complete compliance with Department of Health Services ("DHS") regulations before breath-test results are admissible as evidence in a prosecution for driving under the influence ("DUI"). The petition presents one issue: must the state submit a breath-test device's quarterly control function reports in addition to the device's monthly calibration reports to establish prima facie evidence that the testing device was in "proper operating condition at a time before and after the test" pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 28–695(A)(5) (Supp.1993)?

We accept jurisdiction over this special action for two reasons: (1) Division One and Division Two of this court apparently have taken conflicting views concerning the issue presented; and (2) the state has no procedural vehicle for obtaining review of this matter except by petitioning for special action. *See State ex rel. McDougall v. Superior Court,* 178 Ariz. 544, 545, 875 P.2d 203, 204 (App. 1994).

We hold that the state's submission of monthly calibration reports satisfied the requirements of A.R.S. section 28–695(A)(5). Thus, because the real party in interest, Daniel Stock, concedes that the state satisfied the other four requirements of section 28–695(A), his breath-test results were admissible at trial. Accordingly, we reverse the superior court's ruling and reinstate Stock's conviction and sentence.

## I. FACTS AND PROCEDURAL HISTORY

Stock was riding his motorcycle on a Phoenix street when he was stopped by the police. Because he was weaving, the officers suspected that Stock was intoxicated. The officers conducted a field-sobriety test, which Stock failed. They then transferred Stock to their DUI van, where Stock consented to a breath test. The van was equipped with an Intoxilyzer IR 5000 breath-testing device.

Before administering the test, the officer observed Stock for twenty minutes in accor-

Roderick G. McDougall, City Atty. by Fred A. Bibeau, Phoenix, for petitioner.

Harley Kurlander, Tucson, for real party in interest.

### OPINION

TOCI, Judge.

The state filed a special action petition seeking review of the superior court's ruling

dance with A.R.S. section 28–695(A)(3). He then administered duplicate tests to Stock. The first test revealed an alcohol concentration of .120. The second test, administered seven minutes later, revealed an alcohol concentration of .125.

Stock was arrested and later tried in the Phoenix Municipal Court for driving under the influence of intoxicating liquor and for having an alcohol concentration of .10 or above within two hours of driving, each a class 1 misdemeanor. At trial, the state sought to introduce in evidence the results of Stock's breath tests pursuant to A.R.S. section 28–695(A), which delineates the foundational requirements necessary for admission of breath-test results. Stock conceded that the breath-testing device was approved by DHS, that the officer who performed the test possessed a valid permit, and that the officer followed the approved DHS checklist.

To satisfy A.R.S. section 28–695(A)(5), the state established through monthly calibration reports that the testing device was in proper operating condition both before and after Stock's test. The state then offered in evidence the results of Stock's breath tests. Stock objected, asserting that the calibration reports did not establish adequate foundation for the breath tests. He argued that the results of the device's control function tests, which must be performed quarterly pursuant to a DHS regulation, were also required. The trial court overruled Stock's objection, concluding that section 28–695(A)(5) did not *require proof of complete compliance with* the DHS regulations. The jury convicted Stock of driving under the influence but acquitted him of the other charge. The trial judge imposed a term of two years' probation.

Stock appealed to the superior court. That court overturned Stock's conviction and remanded the case to municipal court for a retrial. The superior court reasoned that because section 28–695(D) authorizes DHS to enact regulations designed to ensure the accuracy and reliability of breath-test devices, the state must show compliance with those regulations to satisfy section 28–695(A)(5). This special action followed.

## II. DISCUSSION

We hold that the superior court erred as a matter of law by ruling that the state did not satisfy the foundational requirements of A.R.S. section 28–695(A). Section 28–695 provides in part:

A. The results of a breath test administered for the purpose of determining a person's alcohol concentration are admissible as evidence in any trial, action or proceeding upon establishing the following foundational requirements:

1. The test was performed using a quantitative breath testing device approved by [DHS]. . . .

2. The operator who conducted the test possessed a valid permit issued by [DHS] to operate the device used to conduct the test.

3. Duplicate tests were administered and the tests results were within 0.02 alcohol concentration of each other or an operator observed the person charged with the violation for twenty minutes immediately preceding the administration of the test.

4. The operator who conducted the test followed an operational checklist approved by [DHS] for the operation of the device used to conduct the test. . . .

5. The device used to conduct the test was in proper operating condition. *Records of periodic maintenance which show that the device was in proper operating condition at a time before and after the test are admissible* in any proceeding as prima facie evidence that the device was in proper operating condition at the time of the test. . . .

B. COMPLIANCE WITH SUBSECTION A IS THE ONLY REQUIREMENT FOR THE ADMISSION IN EVIDENCE OF A BREATH TEST RESULT.

. . . .

D. The director of [DHS] shall adopt rules prescribing methods and procedures for the administration of breath tests to determine alcohol concentration. These rules shall include:

. . . .

2. *Procedures for ensuring the accuracy of results obtained from approved breath testing devices.*

. . . .

(Emphasis added.)

In accordance with section 28–695(D)(2), DHS promulgated regulation R9–14–404, which provides in part:

A. Law enforcement agencies ... who conduct alcohol concentration [tests with] breath testing devices shall implement a quality assurance program ... [that] shall include:

1. Criteria for insuring the proper operation of devices by testing device controls and indicators to ensure that they are functioning as required by the Department quality assurance procedure for the devices. The examinations shall be performed and recorded within 90 days of each other following the appropriate Department quality assurance procedure. . . .

2. Calibration checks of breath testing devices which shall be performed and recorded in accordance with the requirements of the appropriate Department quality assurance procedure ...

3. Calibration checks of breath testing devices which shall be performed within 31 days of each other. . . .

The plain language of section 28–695 compels the conclusion that the state need not submit both monthly calibration reports and quarterly control function reports to satisfy section 28–695(A)(5). Subsection (B) of that section makes it clear that subsection (D) has no bearing on establishing foundation under subsection (A). Thus, the DHS regulations promulgated pursuant to subsection (D) are not included in subsection (A)(5). Rather, subsection (A)(5) merely requires the submission of "records of periodic maintenance."

If the legislature had intended to require the state to demonstrate full compliance with the regulations promulgated pursuant to subsection (D)(2), the legislature would have said so in subsection (A)(5). Instead, the legislature enacted subsection (B), which separates subsection (D) from the foundational requirements of subsection (A). Thus, the state did not need to show full compliance with regulation R9–14–404 to make a prima facie showing that the testing device was in proper operating condition when Stock's breath was tested. *See Tyers v. Arizona Dep't of Transp.*, 165 Ariz. 392, 394, 799 P.2d 12, 14 (App.1990) (reaching identical conclusion in driver's license suspension case).

The evolution of section 28–695 supports our conclusion. In 1983, what is now subsection (B) was not included in section 28–692.03 (now section 28–695). At that time, what is now subsection (D) was subsection (B). Thus, it was unclear whether compliance with all the DHS regulations designed to ensure the accuracy of testing devices was necessary to establish a foundation for admission of breath-test results. This ambiguity led our supreme court to rule, in *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1983), that proof of compliance with all the DHS regulations was necessary to establish such a foundation. *Id.* at 601–02, 680 P.2d at 132–33.

In 1984, our legislature responded to *Fuenning* by amending section 28–692.03 to add subsection (B) (now section 28–695(B)). *See State v. O'Haire*, 149 Ariz. 518, 520, 720 P.2d 119, 121 (App.1986). In a later decision, this court recognized that the 1984 amendment nullified *Fuenning's* holding on the foundational requirements for admission of a breath test:

[The] 1984 amendment ... reduced the foundational requirements necessary to admit the results of a breath test. Prior to that amendment, A.R.S. § 28–692.03, as interpreted by our Supreme Court in *Fuenning* ... required the state to satisfy procedures and guidelines promulgated by [DHS].

*State v. Leonard,* 151 Ariz. 1, 4, 725 P.2d 493, 496 (App.1986). Thus, in 1987, we held that the state's submission of a monthly calibration report demonstrating proper calibration both before and after the defendant's breath test satisfied then section 28–692.03(A)(5). *See State v. White,* 155 Ariz. 452, 457–58, 747 P.2d 613, 618–19 (App.1987).

Nevertheless, because section 28–692.03(A) referred to section 28–692, some cases decided by Division Two of this court read section 28–692(G)[1] into section 28–692.03(A). Prior to 1990, section 28–692(G) read as follows:

> Any analysis of a person's blood, urine, breath or other bodily substance is valid under the provisions of this section if it is performed according to methods approved by [DHS] and by a person possessing a valid permit issued by [DHS] for such purpose.

Applying section 28–692(G), *Ciulla v. Miller ex rel. Arizona Highway Department,* 169 Ariz. 540, 542, 821 P.2d 201, 203 (App.1991), the court held that breath-test results are inadmissible as evidence absent proof of compliance with the DHS regulations.[2] Similarly, in *State v. Harrison,* 157 Ariz. 184, 186, 755 P.2d 1172, 1174 (App.1988), Division Two, relying on *Fuenning,* held that breath-test results are inadmissible absent submission of quarterly control function test results.

 For several reasons, we believe that *Ciulla* and *Harrison* are not authoritative. First, in 1990, the legislature deleted the reference in section 28–692.03(A) to section 28–692 and repealed section 28–692(G), making it clear that the state need not prove compliance with all the DHS regulations before establishing a foundation for admission of breath-test results. Thus, to the extent that those cases rely on 28–692(G) for their holding, they have been superseded by the 1990 amendment to that statute.

Furthermore, *Harrison* relied on *Fuenning* despite the 1984 amendment that added subsection (B), which nullified *Fuenning's*

foundational requirements holding. In fact, *Harrison* did not even mention subsection (B). The court did, however, recognize that section 28–692.03 involved "the admissibility of evidence, not the reliability of testing mechanisms." 157 Ariz. at 186, 755 P.2d at 1174. But, the court then ruled that the defendant's breath-test results were inadmissible because the state had not complied with the DHS regulation requiring quarterly control function testing. *Id.*

We believe that *Harrison* cannot be reconciled with the plain language of the current statute. The statute does not require that the state prove compliance with all the DHS regulations to establish prima facie evidence that a breath-test device was in proper operating condition at the time a test was administered. Rather, a monthly calibration report showing proper calibration both before and after the date of a test establishes such prima facie evidence. *See White,* 155 Ariz. at 457–58, 747 P.2d at 618–19.

A defendant, however, is free to rebut this prima facie showing by providing evidence that the test results are unreliable. *See Tyers,* 165 Ariz. at 395, 799 P.2d at 15. A defendant can subpoena quarterly testing results or any other evidence that potentially could rebut this prima facie evidence. Absent sufficient rebuttal evidence, breath-test results are reliable evidence of intoxication. *See id.* To the extent *Harrison,* a criminal case, holds that breath-test results are never admissible absent proof of compliance with the DHS regulations, we disagree with that case.

In several recent civil cases, Division One, rather than disapproving of *Harrison* simply distinguished it on the ground that the foundational requirements for the admission of evidence in civil cases need not always mirror the foundational requirements in criminal cases. *See, e.g., Tyers,* 165 Ariz. at 394, 799 P.2d at 14. We believe, however, that the latter principle is not applicable here. Section 28–695(A) does not distinguish between

---

1. The legislature repealed section 28–692(G) in 1990. *See* 1990 Ariz.Legis.Serv. 375 (West).

2. The court noted that section 28–692(G) was repealed after the defendant's arrest and trial.

civil and criminal cases, but it applies "*in any trial, action or proceeding* . . . ." (Emphasis added.) Thus, section 28–695 applies to both civil and criminal cases. *See White,* 155 Ariz. at 457, 747 P.2d at 618 (applying former section 28–692.03 in criminal case); *Leonard,* 151 Ariz. at 4, 725 P.2d at 496 (stating, in a criminal case, that subsection (B) reduced foundational requirements for admission of breath-test results).

■ Here, it is undisputed that the state satisfied the first four requirements of section 28–695(A). To satisfy section 28–695(A)(5), the state submitted monthly calibration reports demonstrating proper calibration both before and after Stock's breath test. The report revealed that the testing device was checked on the day of respondent's breath test and one week later, in compliance with the DHS regulation requiring monthly calibration checks. Thus, the state made a prima facie showing that the testing device was in proper operating condition at the time of Stock's test. *See Tyers,* 165 Ariz. at 394, 799 P.2d at 14; *White,* 155 Ariz. at 457–58, 747 P.2d at 618–19. Because Stock offered no rebuttal evidence, the results of his breath tests were sufficient to support his conviction.

We note that Stock, in his response to the state's petition, cited *State v. Sabalos,* 178 Ariz. 420, 874 P.2d 977 (App.1994), and *Robinson v. Prins,* 161 Ariz. 195, 777 P.2d 693 (App.) *aff'd,* 161 Ariz. 198, 777 P.2d 696 (1989), to support his argument that section 28–695(A)(5) requires the submission of the quarterly control function test results. Those cases, however, did not involve the issue of the quantum of evidence necessary to satisfy section 28–695(A)(5). Thus, they are not relevant here.

We also note that in the trial court, the state and the trial court differed on whether *State v. Velasco,* 165 Ariz. 480, 483, 799 P.2d 821, 824 (1990), supported the state's position or Stock's position. We need not, however, concern ourselves with *Velasco* because it did not involve the issue presented in this special action. The issue in *Velasco* was whether the silica gel method of preserving breath for independent testing was so unreliable that it violated the defendant's due process rights. Furthermore, the events at issue in that case occurred before the legislature repealed section 28–692(G). Thus, *Velasco* has no precedential value here.

## III. CONCLUSION

We hold that the superior court erred by ruling that the state failed to satisfy the foundational requirements of A.R.S. section 28–695(A). Accordingly, we reverse the superior court's decision and reinstate Stock's conviction and sentence.

JACOBSON, P.J., and CONTRERAS, J., concur.