930 P.2d 502

**The STATE of Arizona, Petitioner,**

**v.**

**The Honorable Robert DUBER II, a Judge for The Superior Court of The State of Arizona, County of Gila, Respondent,**

**and**

**John D. THOMAS, Real Party in Interest.**

**No. 2 CA–SA 96–0094.**

Court of Appeals of Arizona, Division 2, Department A.

July 26, 1996.

Review Denied Jan. 14, 1997.

Reconsideration Denied Aug. 19, 1996.

Jerry B. DeRose, Gila County Attorney by David P. Savel, Globe, for State.

De Ninno & Pardee by David R. Pardee, Globe, for Real Party in Interest.

## PER CURIAM.

The state seeks special action relief from the respondent judge's ruling that breath test results are inadmissible in the underlying justice court DUI trial against the real party in interest. We disagree with both the respondent judge's reading of our decisions in *Ciulla v. Miller ex rel. Ariz. Highway Department*, 169 Ariz. 540, 821 P.2d 201 (App.1991), and *State v. Harrison*, 157 Ariz. 184, 755 P.2d 1172 (App.1988), and with Division One's interpretation of those cases in *State ex rel. McDougall v. Superior Court (Stock)*, 181 Ariz. 202, 888 P.2d 1389 (App. 1995). We conclude that the breath test results here are admissible, even though the law enforcement agency did not fully comply with Department of Health Services (DHS) regulations on testing the device because the records show the device was in proper operating condition. Because the state has no adequate remedy by appeal, we accept jurisdiction and grant relief. Ariz. R. P. Sec. Actions 1 and 3, 17B A.R.S.

Real party in interest John Thomas was arrested on April 16, 1995, for violating A.R.S. § 28–692(A)(1) and (2). He agreed to submit to an Intoxilyzer test of his breath. Trial began on October 30, and the state moved to admit certified copies of the periodic maintenance records for the Intoxilyzer as part of the foundation required for admission of the test results under A.R.S. § 28–695(A). Defense counsel objected on the ground that the quarterly function and accuracy tests required by DHS had been performed five days late. The trial judge overruled the objection, and the trial was recessed at Thomas's request to permit him to file a special action in the Gila County Superior Court. After oral argument, the respondent judge granted special action relief and ordered the trial judge to sustain Thomas's objection to admission of the records.

Citing *Ciulla* and *Robinson v. Prins*, 161 Ariz. 195, 777 P.2d 693 (App.), *aff'd*, 161 Ariz. 198, 777 P.2d 696 (1989), the respondent judge stated that a split of authority exists between Division One and Division Two of this court and that he was required to follow the Division Two cases, which, he wrote, hold that "failure to follow the D.H.S. standards for equipment testing is fatal to the admissibility of the intoxilyzer results." We do not agree that a split of authority exists. Moreover, *Ciulla* does not stand for the proposition for which it was cited.

*Ciulla* was an appeal from a superior court judgment affirming an administrative suspension of a driver's license for driving while under the influence. Citing both *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1983), and *Robinson*, we stated that "[o]ur supreme court requires proof, in court proceedings under A.R.S. § 28–692, that an agency has complied with [the DHS] rules before intoxilyzer results can be admitted." 169 Ariz. at 542, 821 P.2d at 203. In our ruling, however, we held that the appellant's breath test results were admissible despite his hearsay objection that only an affidavit had been offered to show that the testing device was in proper operating condition. Because the law enforcement agency's compliance with DHS regulations was not in issue in *Ciulla*, it does not render inadmissible the breath test results in this case.

In *Robinson*, an appeal from a suspension of a driver's license for refusal to submit to a breath test, Division One of this court ruled that "the validity and admissibility of ... test results in an implied consent hearing are conditioned upon compliance with the requirements of A.R.S. §§ 28–692(G) and – 692.03." 161 Ariz. at 197, 777 P.2d at 695. The test results in that case were held inadmissible because the state had failed to show either that the device was in proper operat-

ing condition or that the officer was qualified to administer the test, neither of which is true here. Because the foundational requirements of § 28–695(A) had not been met there, that case also does not prohibit admission of the test results here.

The state argues that the test results are admissible under the Division One holding of *Stock*. We agree with the result in that case, but not with its reasoning. After tracing the history of the amendments to the DUI statutes, the court concluded that subsection (D) of § 28–695 "has no bearing on establishing foundation under subsection (A)." *Id.* at 205, 888 P.2d at 1392. We believe that conclusion renders subsection (D) superfluous, a finding contrary to the rules of statutory interpretation, *State v. Pitts*, 178 Ariz. 405, 874 P.2d 962 (1994), particularly because subsection (D) was adopted before both subsections (A) and (B) were added to the statute.

In 1982, the legislature enacted § 28–692.03, renumbered in 1992 as § 28–695(D), authorizing the DHS director to adopt rules "prescribing methods and procedures for the administration" of breath tests to determine blood alcohol content. 1982 Ariz. Sess. Laws ch. 234, § 10; 1992 Ariz. Sess. Laws ch. 330, § 24. Subsection (D)(2) presently requires DHS to adopt rules on, among other things, "[p]rocedures for ensuring the accuracy of results obtained from approved breath testing devices." The legislature added subsection (A) in 1983 to provide that breath test results are admissible as evidence if five foundational requirements are met. 1983 Ariz. Sess. Laws ch. 279, § 8. Subsection (B) was added in 1984, 1984 Ariz. Sess. Laws ch. 257, § 6; it currently reads: "Compliance with subsection A is the only requirement for the admission in evidence of a breath test result." § 28–695(B).

In *Stock*, four of the foundational requirements of § 28–695(A) were met. For the fifth, that the device was in proper operating condition, the state offered into evidence monthly calibration reports dated before and after the test at issue. The defendant objected because the state had not also produced quarterly control function records. Because the monthly calibration reports showed the device was operating properly, the court held that the evidence satisfied the fifth foundational requirement of "[r]ecords of periodic maintenance" for the testing device.

In doing so, however, the court observed that this court's previous decision in *Harrison* cannot be reconciled with the language of § 28–695(B). We disagree. Our holding in *Harrison* was not, as the court in *Stock* stated, "that breath-test results are inadmissible absent submission of quarterly control function test results." 181 Ariz. at 206, 888 P.2d at 1393. In *Harrison*, the defendants in two separate DUI cases had requested that a second sample be taken in accordance with their due process rights under *Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979). The law enforcement agency had taken the samples using a second-sample collection device that had never been tested by the state. At a hearing on a motion to suppress the initial breath tests, a criminalist testified that the results from the second samples were significantly different from those of the initial tests. The trial court ruled that the samples were inherently unreliable and were thus inadmissible.

We affirmed that ruling, agreeing with the trial court that provision of a second sample was meaningless unless a defendant could be confident of its test results. The basis of that ruling was the law enforcement agency's use of a testing device that had neither been tested nor approved by DHS. In addition, the state could not offer periodic maintenance records to show that the device was in proper operating condition because there were none. Thus, the second samples were inadmissible because the state could not meet two of the foundational requirements of § 28–695(A).

Finally, we held that the initial test results were inadmissible, not because they did not meet the foundational requirements, but as a sanction for the state's violation of the defendants' due process rights by providing second samples that did not meet the requirements. We noted that the legislature had added subsection (B) to former § 28–692.03, now § 28–695, in 1984, finding that (B) involved the admissibility of evidence rather than the reliability of testing mechanisms, the focus of subsection (D). We believe both subsections remain viable. In *Fuenning*, the supreme court expressed the need for all law enforcement agencies to follow uniform stan-

**428**

dards throughout the state in administering breath tests to determine blood alcohol level, noting that "[g]uilt or innocence should not depend upon whether defendant was arrested on the north or south side of Baseline Road." 139 Ariz. at 602, 680 P.2d at 133. That need still exists, a need the legislature acknowledged by retaining subsection (D) of § 28–695 while adding subsections (A) and (B).[1]

■ Subsection (D), therefore, requires DHS to adopt rules for approving quantitative breath testing devices, establishing the qualifications of persons who conduct tests, and ensuring the accuracy of the test results obtained from approved devices. If a law enforcement agency fully complies with those rules, there should be no question about the admissibility of breath test results. If the agency fails to fully comply, however, the test results can still be admitted into evidence so long as the five foundational requirements of subsection (A) are met.

■ In this case, the law enforcement agency did not fully comply with the DHS rules adopted under subsection (D) because the quality assurance tests were conducted within a ninety-five day period rather than the required ninety-day period. Ariz. Admin. Code R9–14–404. The state, however, offered into evidence monthly calibration reports showing the testing device was in proper operating condition. It is undisputed that the other foundational requirements were met. Because the monthly calibration reports constituted periodic maintenance records meeting the fifth requirement, the trial court correctly overruled Thomas's objection to their admission.

The case is remanded and the respondent judge is ordered to vacate his order granting special action relief and to issue an order denying it.

LIVERMORE and FLÓREZ, JJ., and CHARLES E. ARES, J. Pro Tem., concur.

1. The legislature, moreover, did not discard the subsection when it completely revamped Title 28 in 1995. Effective January 1, 1997, it becomes a separate statute, renumbered as § 28–2824. 1995 Ariz. Sess. Laws ch. 132, § 3.