793 P.2d 1109
**Nancy Jane SHERRILL,
Plaintiff–Appellant,**

v.

**ARIZONA DEPARTMENT OF TRANSPORTATION, Defendant–Appellee.**

**No. 1 CA–CV 88–591.**

Court of Appeals of Arizona,
Division 1, Department D.

Feb. 8, 1990.

Review Granted July 10, 1990.

Michael C. Hughes, John C. Hughes, Phoenix, for plaintiff-appellant.

Robert Corbin, Atty. Gen. by Leonardo Ruiz, Asst. Atty. Gen., Phoenix, for defendant-appellee.

## OPINION

GRANT, Chief Judge.

In this appeal, we decide what constitutes successful completion of a breathalyzer test.

### FACTS

Nancy Jane Sherrill was arrested January 29, 1988, for driving while intoxicated. A police officer took her to the Scottsdale Police Department and requested that she submit to a breathalyzer test. She agreed to do so and also admitted that she had been drinking.

Sherrill took the breathalyzer test twice. On the first occasion, she failed to blow hard enough into the breathalyzer machine to give a sufficient sample; the machine indicated it had received a "deficient sample" and showed a blood-alcohol content (BAC) reading of 0.000%. The second time, the machine again indicated Sherrill had provided a deficient sample but she had blown hard enough to produce a BAC reading of 0.295%.

The police officer directing administration of the breathalyzer determined that Sherrill failed to successfully complete the test as required by the Implied Consent Law, A.R.S. § 28–691.[1] He forwarded a

---

1. A.R.S. § 28–691 provides in relevant part:

   A. Any person who operates a motor vehicle within this state gives consent, subject to the provisions of § 28–692, to a test or tests of his blood, breath, or urine for the purpose of determining the alcohol or drug content of his blood if arrested for any offense arising out of acts alleged to have been committed in violation of this chapter while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs. The test or tests chosen by the law enforcement agency shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor or drugs.

   B. Following an arrest a violator shall be requested to submit to and successfully complete any test prescribed by subsection A of this section, and if the violator refuses he shall be informed that his license or permit to drive will be suspended or denied for twelve months unless he expressly agrees to submit to and successfully completes the test. A failure to expressly agree to the test or successfully complete the test is deemed a refusal....

   C. Any person who is dead, unconscious or otherwise in a condition rendering him incapable of refusal is deemed not to have withdrawn the consent provided by subsection A of this section and the test or tests may be administered, subject to the provisions of § 28–692.

444

copy of the report of refusal to the Motor Vehicle Division, as required by A.R.S. § 28–691(D). Sherrill requested a hearing. At the hearing, Sherrill stipulated that one sample had produced a reading of 0.295% BAC. The state introduced as evidence of refusal the two machine readouts indicating the two samples were deficient. The hearing officer concluded that Sherrill had refused to successfully complete the test and suspended her license for 12 months.

Sherrill appealed the license suspension to the superior court, which affirmed the hearing officer's administrative decision to suspend her driver's license. Meantime, Sherrill also had been charged with DWI.[2] The state contended that the 0.295% BAC reading produced by the second test was valid and admissible, even though it was based on a deficient sample. Sherrill ultimately pleaded guilty to the DWI charge.

ISSUE

We must decide whether a deficient breath sample that yields a reading well above the legal presumption of intoxication[3] is a successful completion of the test under A.R.S. § 28–691(B).

ANALYSIS

Sherrill contends that her license should not have been suspended because A.R.S. § 28–691 has a "prophylactic" purpose that was satisfied both by her second test result, which was well above the legal presumption of intoxication, and by her admission even before taking the test that she was drunk. She additionally argues that the law requires that her refusal be willful.

The state responds that, regardless of the machine's production of a usable readout, Sherrill failed to complete the test by not breathing into the machine for the required time period, as shown by the machine's indication that she gave a deficient sample. At oral argument, the state's at-

torney suggested that Sherrill might have had a reading higher than the 0.295% BAC had she completed the test, and that she actually had deprived the state of evidence.

We reject Sherrill's contention that she met the intent of the Implied Consent Law by blowing hard enough to provide usable evidence that she had been driving with a BAC higher than the legal presumption. The Implied Consent Law provides a sanction separate from that of driving while intoxicated if a driver refuses to submit to a BAC test: the driver's license must be suspended. A.R.S. § 28–691(B) ("if the violator refuses [a test] he shall be informed that his license or permit to drive will be suspended or denied for twelve months unless he expressly agrees to submit to and successfully completes the test"). Suspension of the driver's license under the Implied Consent Law is complemented by the sanctions imposed for a DWI conviction in that the BAC reading resulting from compliance may be the evidence for a DWI prosecution against the driver. A driver may choose not to comply with the Implied Consent Law and deprive the prosecutors of the evidence—most often the results of a breath test—that could be used against the driver in the DWI prosecution. See A.R.S. § 28–692(E). The lack of a BAC reading may prevent the driver from being convicted of DWI, but the refusal to comply with the Implied Consent Law ensures that the driver loses his or her license for 12 months for failing to comply with the administrative procedure. See, e.g., Gilbert v. Dolan, 41 Colo.App. 173, 586 P.2d 233 (1978) (dismissal of criminal DWI charge has no effect on the revocation of the plaintiff's license for refusing to comply with implied consent law).

In Kuznicki v. Arizona Dep't of Transp., 152 Ariz. 381, 732 P.2d 1119 (App. 1986), the defendant argued that the state could not on one hand use the sample as proof of guilt of DWI and on the other

---

2. Although the record is unclear, Sherrill apparently was charged with violating A.R.S. § 28–692(B), driving with a BAC of 0.10% or more. We cannot tell whether she also was charged with violating A.R.S. § 28–692(A), driving under the influence of intoxicating liquor.

3. Under A.R.S. § 28–692(E)(3), a BAC of 0.10% or more raises the presumption that the defendant was under the influence of intoxicating liquor.

hand contend that the appellee had refused to be tested. Division 2 disagreed, stating:

> Essentially all the hearing officer ruled was that an unusable test did not satisfy the statute. That a deficient breath sample prompted a (perhaps unprovable) charge of driving with a blood alcohol level in excess of the statutory limit ... [is] *simply irrelevant to the issue of whether such a sample complied with the statutory obligation to take a breath test* .... Nothing prevented the appellee from offering evidence at the hearing that the sample provided was not deficient.

*Id.* at 382, 732 P.2d at 1120 (emphasis added). Had Sherrill's case gone to trial, Sherrill could have attacked the validity of the BAC reading. The issue never arose, however, because she pleaded guilty to the DWI charge.

■ Sherrill's argument implies that compliance with the Implied Consent Law is irrelevant as long as she provided prosecutors with a BAC reading high enough to show she was drunk. The law once allowed drivers to escape sanctions for failing to comply if they pleaded guilty to DWI charges and did not appeal their convictions. This scheme was found to be unconstitutional in *Voyles v. Thorneycroft*, 398 F.Supp. 706 (D.Ariz.1975), and was deleted from the statute in 1976.

■ We also disagree with Sherrill that her refusal to take the test must be evidenced by some willful act. True, in *Kuznicki* and in *Ontiveros v. Arizona Dep't of Transp.*, 151 Ariz. 542, 729 P.2d 346 (App. 1986), the defendants deliberately failed to properly take the breath test by either circumventing the process or by playing with the machine. In *Kuznicki*, the defendant five times purported to take the breath test; each time he blew out of the side of his mouth rather than into the breath-test machine. The machine once got enough breath to register a readout, although it characterized the sample as deficient. Division 2 determined that the defendant's actions constituted refusal to take the breath test. Similarly, in *Ontiveros*, the defendant verbally agreed to take the test, but his acquiescence was negated by his conduct in blowing little puffs of air and sticking chewing gum on the breathalyzer's mouthpiece. Division 2 again determined that the defendant's failure to furnish a sufficient breath sample was properly treated as a refusal to take the test. Despite the defendants' "willingness" in both cases, the key was that they each failed to furnish sufficient breath samples. *Kuznicki*, 152 Ariz. at 382, 732 P.2d at 1120. Failing to expressly agree to take a test or failing to complete a test successfully constitutes refusal under A.R.S. § 28–691(B). The statute does not require willful or deliberate actions.[4]

We recently dealt with a fact situation almost exactly the same as Sherrill's. In *Robinson v. Prins*, 161 Ariz. 195, 777 P.2d 693 (App.), *approved*, 161 Ariz. 198, 777 P.2d 696 (1989), the defendant's first test yielded a reading of 0.132% but the readout indicated that the sample was deficient; a second test resulted in a deficient sample and reading of 0.000%. As with Sherrill, Robinson did not willfully attempt to avoid or sabotage the tests. The hearing officer determined that Robinson had refused the test based only on the machine readouts. The court held that a finding of refusal for administrative purposes cannot rest solely on test results that do not meet statutory foundational requirements as outlined in A.R.S. § 28–692.03(A). As a result, the state must establish that the test was performed using an approved breath-testing device; that the operator possessed a valid permit to operate the device used; that the operator observed the driver for 20 minutes prior to testing; that the operator followed an operational checklist approved by the state Department of Health Services (DHS) for the operation of the device; and that the device was in proper operating condition. We stated:

> In sharp contrast to [*Kuznicki* and *Ontiveros*], the finding of Robinson's refusal rested entirely on the presumed validi-

4. Sherrill provided no evidence at the administrative hearing that she was physically incapable of blowing hard enough to successfully complete the test.

ty of machine printouts indicating that he had provided "deficient" breath samples.

We do not mean to imply that such independent evidence of non-cooperation is always necessary. In its absence, however, a finding of refusal cannot rest solely on test results that do not meet statutory foundational requirements.

. . . .

We hold that an intoxilyzer's "deficient sample" reading constitutes "results of a breath test," which may be admitted as evidence at an implied consent hearing only upon proof that the foundational requirements of § 28-692.03 have been met. . . .

*Robinson*, 161 Ariz. at 196–97, 777 P.2d at 694–95 (footnote omitted). Had the state shown in *Robinson* that all the foundational prerequisites had been met, it could rely solely on the test results (two deficient samples, even though one produced a BAC reading) in its attempt to prove refusal under the Implied Consent Law.

We find that all the foundational prerequisites were met in this case. The only question concerned whether the Scottsdale Police Department used a machine approved by DHS. The statute states that a "properly authenticated certification by [DHS] is sufficient to establish this requirement." A.R.S. § 28-692.03. Although the state did not specifically assert that an approved machine was used, the operator showed permits that he was licensed to operate the Intoxilyzer 5000; the calibration reports indicate they were for an Intoxilyzer 5000 located at the Scottsdale Police Department; and the Intoxilyzer 5000 is one of the machines approved by DHS for use. A.C.R.R. R9-14-404(G). The record sufficiently indicates for foundational purposes that the Intoxilyzer 5000, an approved blood-alcohol determining machine, was used in Sherrill's case.

■ Based on the above reasoning, we hold that the hearing officer did not abuse his discretion by finding that Sherrill's failure to successfully complete the breathalyzer test constituted refusal, even though one of her attempts produced a high BAC

reading. We affirm the hearing officer's finding of refusal and the suspension of Sherrill's license for one year.

GERBER, P.J., concurs.

FIDEL, Judge, dissenting:

As I read the majority opinion, two requirements must be met to establish a breathalyzer test as "unsuccessful" and trigger suspension under A.R.S. § 28-691. (1) The breathalyzer must meet and be operated in compliance with the *Robinson* foundational requirements. (2) The breathalyzer must pronounce a sample "deficient." No evidence is presented what the breathalyzer means by this pronouncement. Its verdict of "deficient" is enough.

This strikes me as excessive judicial deference to a machine.

State law enforcement has not similarly deferred. Rather, on the basis of appellant's breathalyzer reading, the state undertook her prosecution in Scottsdale City Court. When appellant moved to suppress the breathalyzer reading, the state resisted, urging that the test score "completely complied with . . . foundational requirements" and was competent to prove that appellant had been driving with 0.10 or more alcohol concentration in her blood, as required by A.R.S. § 28-692(B).

The majority finds this prosecutorial usage of appellant's breathalyzer reading irrelevant for present purposes. Quoting Division Two's opinion in *Kuznicki v. Arizona Dep't of Transp.*, 152 Ariz. 381, 382, 732 P.2d 1119, 1120 (1986), it states:

> That a deficient breath sample prompted a (perhaps unprovable) charge of driving with a blood alcohol level in excess of the statutory limit . . . [is] simply irrelevant to the issue of whether such a sample complied with the statutory obligation to take a breath test.

This reasoning, I believe, is flawed.

First, it assumes, without record support, that the readout from a sample labelled "deficient" would be weaker—its accuracy more readily attackable at trial—than a sample that satisfied the machine's unrevealed standard of sufficiency. This as-

sumption is merely speculation on the present record. Was the quantity of air that appellant blew into the machine sufficient to register a blood alcohol concentration of .295, but deficient to make that a reliable reading? Was it sufficient to reliably provide a blood alcohol reading of at least .295, but deficient to rule out an even higher level? Was it sufficient to establish a blood alcohol level for the state's evidentiary purposes, but deficient to preserve a surplus quantity for independent testing? Was it sufficient even to provide a surplus sample, but deficient in some other unrevealed respect? This record does not say. And the burden of the record's deficiencies must fall on ADOT, not appellant, because ADOT bore the burden of proving unsuccessful completion below.

The second flaw in the majority's *Kuznicki*-based approach is that it overlooks the state's responsibility, when initiating a prosecution, to "weigh the evidence, the law and the facts, and the chances of successful termination of the prosecution." *State v. Stewart*, 103 Ariz. 457, 458, 445 P.2d 433, 434 (1968). *See also* 1 A.B.A. Standards For Criminal Justice: The Prosecution Function, Standard 3–3.9(a) (2d ed. Supp.1986) ("A prosecutor should not institute, cause to be instituted, or permit the continued pendency of criminal charges in the absence of sufficient admissible evidence to support a conviction.") To say dismissively that the breathalyzer reading merely prompted a "perhaps unprovable charge" is to inappropriately minimize the fact that the reading satisfied criminal prosecutors—exercising a significant screening responsibility—that it constituted competent and usable evidence of crime.

Finally, the majority's *Kuznicki*-based analysis ignores the purpose of A.R.S. § 28–691, which is to assist the state in gathering usable evidence for prosecutions under A.R.S. § 28–692. The appellant satisfied this statutory purpose, and this can hardly be irrelevant—as *Kuznicki* terms it—to the question whether she met the

statutory requirement of "successfully complet[ing]" a breathalyzer test.

In summary, the prosecutorial usage of appellant's breathalyzer reading constituted evidence of successful completion. The only contrary evidence was an unexplained declaration of deficiency by the machine. The hearing officer abused his discretion, in my judgment, by accepting the latter over the former. For these reasons, I would reverse.