799 P.2d 836

Nancy Jane SHERRILL,
Plaintiff–Appellant,

v.

DEPARTMENT OF TRANSPORTA-
TION, Defendant–Appellee.

No. CV–90–0122–PR.

Supreme Court of Arizona,
En Banc.

Oct. 9, 1990.

Michael C. Hughes and John C. Hughes, Phoenix, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Leonardo L. Ruiz, Asst. Atty. Gen., Phoenix, for defendant-appellee.

## OPINION

CORCORAN, Justice.

Nancy Jane Sherrill (petitioner) seeks review of a court of appeals decision affirming her license suspension for refusal to successfully complete a blood alcohol test. 164 Ariz. 442, 793 P.2d 1109. The issue presented is whether the Arizona Department of Transportation (DOT) sufficiently

established a "refusal" under the implied consent statute, A.R.S. § 28–691, absent any evidence of petitioner's willful non-cooperation. DOT's finding was based only on an Intoxilyzer reading indicating "deficient sample" and a blood alcohol content (BAC) level above the legal presumption of intoxication. The prosecution used the test result to obtain a criminal conviction for driving while under the influence of intoxicating liquors (DUI). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24. We granted review pursuant to rule 23, Arizona Rules of Civil Appellate Procedure.

*Facts and Procedural Background*

Petitioner was arrested on January 29, 1988. The arresting officer transported her to the Scottsdale Police Department, and requested she submit to a blood alcohol test on an Intoxilyzer 5000 [1] to determine her BAC. After admitting she was intoxicated, petitioner agreed to take the test. She attempted to cooperate and comply after being instructed by the Intoxilyzer operator about how to blow her breath into the machine. On her first try, the machine reported a BAC result of 0.000% and read "deficient sample." The operator again instructed her on how to use the machine, and petitioner tried again. Her second attempt resulted in a BAC result of .295%, again with a reading of "deficient sample." The officer determined that petitioner failed to successfully complete the test as required under the implied consent statute, and reported her refusal to the Motor Vehicle Division as a civil violation for suspension of her driver's license. *See* A.R.S. § 28–691. The Scottsdale City Prosecutor also brought a criminal action against petitioner in Scottsdale City Court, charging her with DUI, in violation of A.R.S. § 28–692(A) and (B).

In the criminal action, petitioner moved to suppress the results of the test. The prosecutor argued that the test results met the foundational requirements of A.R.S. § 28–692.03(A), and thus were admissible as valid evidence of petitioner's intoxication. The trial court denied petitioner's motion to suppress. She then pleaded guilty to the criminal charge of driving while intoxicated.[2]

Petitioner requested an administrative hearing in the civil suspension action to contest the arresting officer's determination that she "refused" to take the test. DOT presented the test results of "deficient sample" as evidence that petitioner failed to successfully complete the test, even though she gave no indication of willful noncooperation and every indication of cooperation. The hearing officer concluded that petitioner refused the test, and suspended her license for 12 months. The superior court affirmed the hearing officer's suspension, and petitioner appealed to the court of appeals, which also affirmed the decision. Petitioner then sought review in this court. Although the state failed to respond to the petition for review, it did file a brief in the court of appeals.

*Court of Appeals Opinion*

The court of appeals rejected petitioner's contention that she satisfied the requirements of the implied consent statute by providing a test result above the legal presumption of intoxication that the state prosecutor could use to establish she was driving while intoxicated. The majority concluded that a "deficient sample" could be used both (1) as evidence of petitioner's refusal to successfully complete the test in the civil suspension action, and (2) as evidence of her intoxication in the criminal DUI action, where she could have attacked

1. The Intoxilyzer 5000 is a quantitative breath testing device approved by the Department of Health Services (DHS), *see* A.A.C. R9–14–404(G), and authorized for use by A.R.S. § 28–692.03(A)(1).

2. The validity of petitioner's criminal conviction is not at issue in this review of the civil administrative hearing, and we do not have the com-

plete criminal record before us. Therefore, we express no opinion on the propriety of the trial court's denial of petitioner's motion to suppress. We can infer from the record before us in the civil action, however, that the ruling that the Intoxilyzer reading of .295% BAC was admissible in the criminal proceeding was a factor in petitioner's decision to plead guilty to DUI.

the validity of the reading. The court of appeals also rejected her contention that "refusal" to take the test must be evidenced by some willful, noncooperative act, holding that the implied consent statute requires that the state prove only the following for license suspension: (1) the statutory foundational requirements of A.R.S. § 28–692.03; and (2) petitioner's failure to "successfully complete" the test. *See Robinson v. Prins,* 161 Ariz. 195, 777 P.2d 693 (App.), *approved,* 161 Ariz. 198, 777 P.2d 696 (1989). The majority concluded that the state had established the necessary elements to warrant petitioner's license suspension, and affirmed the one-year suspension of petitioner's license.

Judge Fidel dissented because the record presented no evidence of what a "deficient sample" reading means. The dissent concluded that sole reliance on the Intoxilyzer pronouncement constituted "excessive judicial deference to a machine." *Sherrill v. DOT,* 164 Ariz. 442, 445, 793 P.2d 1109, 1112 (App.1990). The dissent pointed out questions unanswered by the record:

> Was the quantity of air that appellant blew into the machine sufficient to register a blood alcohol concentration of .295, but deficient to make that a reliable reading? Was it sufficient to reliably provide a blood alcohol reading of at least .295, but deficient to rule out an even higher level? Was it sufficient to establish a blood alcohol level for the state's evidentiary purposes, but deficient to preserve a surplus quantity for independent testing? Was it sufficient even to provide a surplus sample, but deficient in some other unrevealed respect? This record does not say. And the burden of the record's deficiencies must fall on ADOT, not appellant, because ADOT bore the burden of proving unsuccessful completion below.

*Sherrill,* 164 Ariz. at 445, 793 P.2d at 1112. Noting that the prosecution had successfully resisted suppression of the test result in the criminal DUI action and obtained a ruling that it "constituted competent and usable evidence of crime," the dissent reasoned that "the prosecutorial usage of appellant's breathalyzer reading constituted evidence of successful completion."

*Analysis*

1. *Mootness*

■ Although neither party raised the issue, it appears that the question whether petitioner's driver's license should be suspended has become moot as a practical matter. The record indicates that the hearing officer's decision and order dated May 13, 1988, took effect 20 days later, on June 2, 1988, and petitioner's license was suspended for 12 months from that date. At oral argument in superior court on October 11, 1988, petitioner's counsel noted that petitioner was still without her license. By our calculations, the suspension period resulting from this action terminated in June 1989. We are unable to undo a suspension that has already been completed, and therefore we cannot afford petitioner the relief she originally sought in the administrative hearing.

The implied consent statute does not by its terms provide for a stay of the suspension order beyond the date on which the Motor Vehicle Division (MVD) makes its final decision. *See* A.R.S. § 28–691(G). Thus, the lengthy process of seeking review in the superior court, the court of appeals, and then in this court may not prevent the suspension in many cases like the one before this court. Because this issue is capable of repetition yet evading review, we will address the merits. *See Big D Constr. Co. v. Court of Appeals,* 163 Ariz. 560, 563, 789 P.2d 1061, 1064 (1990).

2. *Standard of Review*

On review of an administrative decision under the implied consent law, we will disturb the hearing officer's decision only if it is not supported by competent evidence. *Robinson v. Prins,* 161 Ariz. at 196, 777 P.2d at 694; *Ontiveros v. DOT,* 151 Ariz. 542, 543, 729 P.2d 346, 347 (App.1986).

■ The scope of an implied consent hearing is limited to the following issues:

(1) whether the law enforcement officer had reasonable grounds to believe the

person had been driving or was in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor;

(2) whether the person was placed under arrest;

(3) whether the person refused to submit to the test; and

(4) whether the person was informed of the consequences of the refusal.

*See* A.R.S. § 28–691(G); *Martin v. Superior Court*, 135 Ariz. 258, 259, 660 P.2d 859, 860 (1983). The state bears the burden of proof in a civil license suspension proceeding to establish the above elements by a preponderance of the evidence. *Willis v. State*, 145 Ariz. 302, 303, 701 P.2d 10, 11 (App.1985); *see also Campbell v. Superior Court*, 106 Ariz. 542, 550–51, 479 P.2d 685, 693–94 (1971).

In this case, petitioner stipulated to all issues except whether she refused to submit to the test. Our sole inquiry on review, then, is whether the hearing officer's determination that petitioner refused the test was supported by competent evidence on this record.

### 3. *The Implied Consent Law*

The implied consent statute provides that any driver within this state is deemed to have given "consent" to a test to determine his or her BAC if arrested for DUI. A.R.S. § 28–691(A). If a driver refuses, no test shall be given, but the driver's license will be suspended or denied for 12 months as a sanction for refusal. A.R.S. § 28–691(B), (D).

The purpose of the implied consent law is to remove from Arizona highways those drivers who may be a menace to themselves and others because of intoxication. *Traylor v. Thorneycroft*, 134 Ariz. 482, 483, 657 P.2d 895, 896 (App.1982). The sanction of administrative license suspension for refusal to submit to the test was enacted to assure that licenses of dangerous drivers are revoked quickly, and to increase the certainty that a drunk driver receives a penalty even if that driver provided no evidence of intoxication. *See* Minutes of the Committee on Judiciary, Arizona Senate, April 7, 1987, H.B. 2273, at 14. The "consent" aspect of the statute also assures that no physical violence or coercion will occur against a person who is noncooperative with a law officer's effort to obtain necessary chemical evidence of intoxication. *Campbell*, 106 Ariz. at 547, 479 P.2d at 690.

The civil suspension proceeding for refusing to submit to the test is separate from and unrelated to the criminal prosecution for DUI. *Compare* A.R.S. § 28–691 *with* § 28–692. Thus, a driver may be charged with both *refusing* the test and DUI, and can be punished for two separate violations, one civil and one criminal. *See Campbell v. Superior Court*, 107 Ariz. 330, 487 P.2d 397 (1971). In addition, the outcome of one proceeding usually will not have any effect on the outcome of the other. *See, e.g., Gilbert v. Dolan*, 41 Colo. App. 173, 586 P.2d 233 (1978) (acquittal of DUI charge had no effect on revocation of license for refusal to take chemical test); *Covington v. MVD*, 102 Cal.App.3d 54, 162 Cal.Rptr. 150 (1980) (conviction of DUI did not bar subsequent revocation of license for refusal to submit to test); *Walker v. State*, 229 Mont. 331, 746 P.2d 624 (1987) (civil proceeding is separate and distinct from criminal proceeding); *In re Kramer*, 377 N.W.2d 589 (S.D.1985) (disposition of criminal charge is irrelevant to disposition of license revocation proceeding); *Brewer v. State*, 23 Wash.App. 412, 595 P.2d 949 (1979) (civil proceeding is separate and distinct from criminal proceeding).

█ In this case, however, petitioner contends that the prosecution's successful use of the .295% test result as evidence of her intoxication in the criminal proceeding indicates she did not refuse to take the test. In other words, she contends "that the state could not on the one hand contend that the sample furnished provided proof of guilt and on the other hand contend that [she] refused to be tested." *See Kuznicki v. DOT*, 152 Ariz. 381, 382, 732 P.2d 1119, 1120 (App.1986). The court of appeals rejected this position, relying on *Kuznicki:*

Essentially all the hearing officer ruled was that an unusable test did not satisfy

the statute. That a deficient breath sample prompted a (perhaps unprovable) charge of driving with a blood alcohol level in excess of the statutory limit ... *[is] simply irrelevant to the issue of whether such a sample complied with the statutory obligation to take a breath test....* Nothing prevented the appellee [motorist] from offering evidence at the hearing that the sample provided was not deficient.

*Sherrill,* 164 Ariz. at 443, 793 P.2d at 1110, quoting *Kuznicki,* 152 Ariz. at 382, 732 P.2d at 1120 (emphasis provided by court of appeals).

We disagree with this reasoning. In the absence of any other evidence of petitioner's resistance to the test, indicated by either verbal or nonverbal willful noncooperation, we believe the fact that the prosecution utilized a test result with a reading above 0.10% BAC, the legal presumption of intoxication, as valid evidence to obtain a criminal DUI conviction, is a relevant factor in determining whether petitioner "refused" to take the test. Such a factor need not preclude a finding of refusal, however, if other evidence in the record satisfies the state's burden of proof. We must therefore determine what evidence exists regarding the "deficiency" of the sample and how that evidence relates to the question of refusal.

### 4. *"Deficient Sample" as Evidence of Refusal*

Previously, the implied consent statute merely required the driver "to submit to" the test, and provided for license suspension "if he refuses to submit to the test." *See* Laws 1982, Ch. 234, § 6. We defined "a refusal to submit" as occurring "where the conduct of the arrested motorist is such that a reasonable person in the officer's position would be justified in believing that such motorist was capable of refusal and manifested an unwillingness to submit to the test." *Campbell,* 106 Ariz. at 553, 479 P.2d at 696.

In 1987, however, the legislature amended the statute to require that the driver "submit to *and successfully complete*"

the test, and provided for license suspension "unless he expressly agrees to submit to *and successfully completes* the test;" the statute now provides that "[a] failure to expressly agree to the test *or successfully complete* the test is deemed a refusal." A.R.S. § 28-691(B); Laws 1987, Ch. 262, § 2 (emphasis added). Neither the statute nor the rules promulgated by the DHS regarding determination of BAC define what constitutes "successful completion" under the implied consent statute. *See* A.A.C. R9-14-401 to -412.

Courts in this and other jurisdictions have had no difficulty in finding a refusal when a driver's words or conduct evidence noncooperation with the test. For example, refusal is established when a driver verbally agrees to take a test, but then negates that consent by his or her conduct. *See, e.g., Ontiveros,* 151 Ariz. at 542, 729 P.2d at 346 (driver acted like he was blowing into the machine, but would "blow little puffs" and deposited chewing gum on the mouthpiece); *Kuznicki,* 152 Ariz. at 381, 732 P.2d at 1119 (driver attempted test 5 times; each time he blew out of the side of his mouth despite instructions not to do so); *People v. Schuberth,* 115 Ill.App.3d 302, 71 Ill.Dec. 24, 450 N.E.2d 459 (1983) (driver agreed to test but sucked on tube rather than blowing into it). Even in cases in which no evidence of noncooperative conduct is presented, courts generally hold that a refusal is established if the driver fails to provide a sufficient breath sample to activate the machine or obtain any result and fails to present evidence indicating a physical inability to comply. *See, e.g., Woolman v. State,* 15 Wash.App. 115, 547 P.2d 293 (1976); *Commonwealth v. Medalis,* 24 Pa.Commw. 12, 354 A.2d 43 (1976).

■ This case, however, is distinguishable because not only did the state fail to present any evidence of petitioner's willful noncooperation, but it also failed to establish that it did not get a usable test from petitioner. At the administrative hearing, the Intoxilyzer operator testified as follows:

Q Would you relate to the Hearing Officer your function in this matter....

A ... I explained to her [petitioner] the process and the Implied Consent was read to her. At the time of the test she was asked to blow into the machine—keeping the [sound] tone on until the machine stopped—the tone stopped and the machine activated and told her to stop blowing. An explanation for that ... the machine will make a person feel like they've used all their air—essentially, that's what it's doing—effecting all this lung area into the machine. The first time the test was offered to her ... the machine did not register a tone so she did not get any reading out of the machine.. "Insufficient sample." Or "Deficient sample"—according to how the machine registers. We again started over the process—again explaining how the machine—what to do with the machine—how the machine was to operate. *She blew into the machine hard enough for the machine to get a tone or registration into the machine but not long enough for the machine to get a sufficient sample.* The machine printed out "Deficient sample" and that was the best the machine had done.

Q Did it show ... in the printout—"Deficient Sample"—it'll show—

A *It'll show that she did get some— enough for the machine to register an alcohol percentage.* But it will register "Deficient sample"—not showing that it's the accurate percentage in her system at that particular time.

Q ... At the time you ran the test—*did she ever state to you that she refused to take it?*

A *No.*

. . . .

Q ... And—did at any time—did she endeavor to blow out of the side of her mouth or anything of that nature to avoid giving you a sample?

A No.

Q Or she didn't have any gum or anything to put on the mouthpiece.

A No.

Q All right. Did it appear to you that in her intoxicated state she was endeavoring to comply with the instructions—that she understood them?

A You're asking me if she attempted to complete the test?

Q Yes. Uh-huh.

A *It appeared that she was attempting to take the test. Yes.*

Q And you didn't see any willful refusal or any of those kind of accidents on her part.

A It didn't appear that way to me. As I understand it—in taking the test—the reason why we did give her—you know—the second opportunity—insomuch as the way the machine is set up—we have a three-minute time period to take the test. *I gave her the second opportunity because it appeared that she was trying and we were trying to get a sufficient sample for her so that it would not be a refusal.*

Q *And she did blow in until the machine registered a reading but it didn't register the full amount. Is that correct?*

A *That's correct.*

(Emphasis added.)

We do not find the above testimony sufficient to establish by a preponderance of the evidence that petitioner failed to "successfully complete" and thereby "refused" to take the test. Her cooperation is uncontradicted. She offered evidence that the state introduced the .295% test result as "valid" evidence meeting the foundational requirements for admissibility in the criminal prosecution,[3] and the state failed to present any evidence of the meaning of the "deficient" reading from the machine. Other than the operator's conclusory remark that petitioner may not have blown hard enough into the machine, which was not supported by any observation of her noncooperation, the record contains no proof that her conduct

---

**3.** This court has held that BAC test results are valid if performed according to the methods approved by the DHS, and will be admissible if the state establishes that the testing agency has complied with the standards of A.R.S. § 28–692.03 and the rules promulgated under that section, A.A.C. R9–14–401 to –412. *See Fuenning v. Superior Court,* 139 Ariz. 590, 680 P.2d 121 (1983).

caused a "deficient sample." In a similar case, the Georgia Supreme Court held that a finding of refusal to take the test could not be supported solely by the operator's conclusion that the driver did not complete the test. *Burson v. Collier*, 226 Ga. 427, 175 S.E.2d 660 (1970). The Georgia Supreme Court concluded:

> Since the statute does not set out what constitutes a complete test, we do not think it a salutary practice to let the Intoximeter operator have an unfettered right to determine what is or is not a complete test.

*Burson*, 226 Ga. at 429, 175 S.E.2d at 662. *See also DPS v. Orr*, 122 Ga.App. 439, 177 S.E.2d 164 (1970). Although both *Burson* and *Orr* have been distinguished on their facts because they involved drivers who suffered from emphysema, *see Pfeffer v. DPS*, 136 Ga.App. 448, 221 S.E.2d 658 (1975), we believe their holdings are based on a burden of proof placed on the prosecution to show refusal rather than on the driver to show physical inability to take the test. Our statute, like the Georgia statute, does not define "successful completion." Additionally, the state in this case did not establish that a "deficient sample" constitutes an incomplete test, particularly when it offered that sample as evidence in the criminal prosecution.

A New York court similarly found evidence of refusal insufficient when the state did not quantify the "completeness" of the test. *Underwood v. Kelly*, 5 A.D.2d 740, 168 N.Y.S.2d 752 (1957). In *Underwood*, the arresting officer testified that the driver first consented to submit to a blood test, and that the doctor "did draw a little blood from him but it was not enough. Then he refused, I don't know the medical details of it, how much you have to draw, whether you have to get a certain amount. The doctor wanted him to finish the test and refused to go any further and under no circumstances or any amount of talking to, neither the doctor nor I could get him to finish the test." The court reversed the license revocation, holding as follows:

> The proof seems to us of insufficient substance, suggesting, as it does, questions which can be answered only by the physician's testimony or perhaps by other expert evidence. Thus it is not shown what quantity of blood was required for the test, what amount was obtained or why a sufficient amount was not obtained in the first instance, if the test failed on that account; nor does the record sufficiently disclose the circumstances under which the test was interrupted, if it was. The circumstances might warrant a determination that petitioner's actions were such that his consent became no consent at all. On the other hand, it may be that if consent and cooperation were given and an opportunity given for a proper test which failed for some reason not attributable to petitioner, it was not unreasonable for petitioner to decline to permit a repetition of the process.

5 A.D.2d at 740, 168 N.Y.S.2d at 753.

The record before us leaves similar questions unanswered. As Judge Fidel pointed out in his dissent, we are left with a bevy of questions about the significance of a "deficient sample" that was, nevertheless, somehow sufficient to withstand a motion to suppress. This record is insufficient to establish that a deficient sample constitutes an unsuccessfully completed test.

We are mindful that other courts have held differently. *See, e.g., Baker v. State*, 42 Colo.App. 133, 593 P.2d 1384 (1979). In *Baker*, the driver submitted to a breath test, but held a coin in his mouth and placed his tongue over the entrance to the balloon. After 7 attempts, the officer estimated the balloon was about half full; he told the driver that because the test was incomplete, he would report it as a refusal. However, the breath sample was analyzed and showed a BAC reading of .228%. The driver argued that because the state was able to procure a reading over the legal presumption of intoxication, it could not revoke his license for refusal to complete the test. The court disagreed:

> To hold that the requirements of the implied consent law are satisfied by partially taking a test would give the licensee the best of both worlds. He would escape any sanction under the implied

consent law, and the sabotaged breath test would be suspect in a drunken driving prosecution on the basis, *inter alia,* that the breath sample contained insufficient air from the lungs and too much from the mouth. *See* 2 R. Erwin, *Defense of Drunk Driving Cases,* §§ 23.01 and 23.01(5) (3d ed. 1978). Therefore, because the reliability of the breath test is in doubt, we cannot say, as a matter of law, that it met the requirements of the implied consent law.

*Baker,* 42 Colo.App. at 135, 593 P.2d at 1386. We find *Baker* distinguishable in at least two respects. First, this record lacks the evidence of willful noncooperation shown in *Baker.* Second, Colorado law places the burden to show compliance on the driver, while Arizona law places the burden to show refusal on the state. *Compare Zahtila v. MVD,* 39 Colo.App. 8, 560 P.2d 847 (1977), *with Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971).

In a well-reasoned dissent in *Baker,* Judge Coyte pointed out that the state presented no evidence of the inadequacy of the sample in the revocation proceeding. The sample met the requirements prescribed by the state health board, as did the test in this case. The dissent pointed out that the majority had gone outside the record to conclude that the driver refused to supply the state with usable evidence:

> [A]ll the standard documentary evidence was admitted at the hearing [indicating] that the test was properly completed, which test was sufficient to show plaintiff to have been under the influence at the time the test was taken. The majority for its facts, appears to be relying on information obtained in reading the cited treatise by R. Erwin, rather than from the evidence produced at the hearing.

42 Colo.App. at 137, 593 P.2d at 1387. The dissent concluded that these circumstances warranted a finding that the test was successfully completed, and thus there was no refusal.

■ We agree with the reasoning of the *Baker* dissent. When the state fails to present evidence showing that it was unable to obtain a usable result from a driver, and in the face of evidence that it actually used a test result to establish intoxication and obtain a conviction in a criminal proceeding, the state fails to establish a "refusal" under the implied consent statute, absent evidence of willful noncooperation. We refuse to hold as a matter of law that a reading of "deficient sample," standing alone, constitutes sufficient evidence of an unsuccessful completion of a breath test, absent a statutory definition or a DHS regulation supporting such a legal conclusion, or absent expert testimony to scientifically establish such a conclusion. *See State v. Gibson,* 515 So.2d 556 (La.App. 1987) (in a criminal proceeding for DUI, a police officer trained to operate the Intoxilyzer 5000 was not qualified to interpret the scientific meaning of a reading of "deficient sample"). At the risk of going beyond the record, as the *Baker* majority did in relying on the Erwin treatise, we note that even that authority has conceded, "A machine reading of 'deficient sample' may indicate something inadequate or wrong with the sample. However, we have no assurance that it is not indicating something wrong with the instrument." 3 R. Erwin, *Defense of Drunk Driving Cases,* § 24A.12 at 24A–272 (3d ed. 1989 Supp.). In the face of the uncertainty in this record about the meaning of "deficient sample," we find insufficient evidence of a refusal to successfully complete the test.

The state argued below that the court of appeals, in an opinion approved by this court, previously recognized a deficient sample as adequate evidence to establish a prima facie case of refusal, even absent independent evidence of willful noncooperation. *See Robinson v. Prins,* 161 Ariz. 195, 777 P.2d 693 (App.), *approved,* 161 Ariz. 198, 777 P.2d 696 (1989). We do not read *Robinson* as standing for that proposition. *Robinson* merely held that a deficient sample could not be introduced as evidence of refusal unless the prosecution established the foundational requirements of A.R.S. § 28–692.03. 161 Ariz. at 198, 777 P.2d at 696. The court reversed the finding of refusal for insufficient evidence, and did not address the relationship between a defi-

cient sample and successful completion of a test.

The "validity" issue discussed in *Robinson* was limited to an inquiry about whether the test met the foundational requirements for admissibility. In a broader sense, however, a "valid" test may include a test that is competent and admissible to obtain a DUI conviction, absent evidence of its inaccuracy or invalidity. If the state used a deficient sample as competent evidence to obtain a DUI conviction, then the sample is not sufficient evidence, *by itself,* to prove a refusal to successfully complete a breath test.

Like the *Robinson* court, however, we do not mean to imply that evidence of willful noncooperation independent of the deficient sample is necessary in every case to support a finding of refusal to take a blood alcohol test. For example, in a case where the prosecution has been unable or unwilling to use that same sample as competent evidence in a criminal prosecution because it is shown to be unreliable or inaccurate, the driver's failure to supply the state with a valid test result might support such a finding. We merely hold that on the basis of *this* record, absent evidence of petitioner's noncooperation, absent evidence of the inadequacy or inaccuracy of the deficient sample, and in the face of evidence that petitioner supplied a *usable* sample above the presumed intoxication level that was instrumental in obtaining a DUI conviction, the state failed to meet its burden to show a refusal to successfully complete the test.

### Conclusion

We reverse the hearing officer's finding of refusal and vacate the order suspending petitioner's license. The court of appeals opinion is vacated.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.