KENNETH L. GOVENDO, ) APPEAL NO. 90-013
 ) SUPERIOR CT. NO. 89-425
 Plaintiff/Appellant, )
 )
 vs. ) OPINION
 )
MICRONESIAN GARMENT )
MANUFACTURING, INC., et al, )
 )
 Defendants/Appellees. )
_____)

Argued and Submitted October 4, 1990

Counsel for Plaintiff/Appellant: Kenneth L. Govendo, Esq.,
 pro se
 P.O. Box 2377
 Saipan, MP 96950

Counsel for Defendants/Appellees: Rexford C. Kosack, Esq.
 P.O. Box 410
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, BORJA, Justice, and ATALIG,

Special Judge.

DELA CRUZ, Chief Justice:

 Kenneth L. Govendo ("Govendo") appeals the dismissal of his

action against Micronesian Garment Manufacturing, Inc. ("MGM" or

"the company") and the NMI Coastal Resources Management Office

272

("CRM" or "the agency").[1] The action was dismissed for failure to state a cognizable claim, pursuant to Com.R.Civ.P. 12(b)(6).[2]

I.

Under the Coastal Resources Management Act of 1983, 2 CMC §§ 1501 et seq. ("the Act"), CRM is charged with the authority to review proposed construction projects within NMI coastal areas.[3] Should a project be proposed in an "area of particular concern" or fall within certain regulatory "major siting guidelines",[4] the CRM permit process is triggered. In that event, construction cannot proceed unless and until the agency issues a permit. If CRM issues a permit, it may impose appropriate limitations upon a project.

The controversy in this case arose from MGM's proposal to construct a garment factory on Saipan.

On November 2, 1988, the company submitted an application to the agency to construct such a factory in Susupe. In the face of public opposition to the proposed siting, MGM withdrew its application.

---

[1] Govendo v. Micronesian Garment Mfg., Inc., Civil Action No. 89-425, Memorandum Decision and Order of Dismissal (N.M.I. Super. Ct. April 2, 1990). CRM elected not to participate in this appeal.

[2] For the pertinent language of this rule, see n.8, infra.

[3] The agency's territorial jurisdiction includes the Commonwealth's territorial waters and "all land areas" except certain federally-owned lands. 2 CMC § 1513.

[4] See Office of Coastal Resources Management Rules and Regulations, 7 Commonwealth Register No. 10 at 4096 et seq. (1985); "Coastal Resources Management Program Major Siting Guidelines", Appellee's Exhibit E. Under the "Major Siting Guidelines," a project meeting any one or more of certain specified criteria (e.g., "[a] peak water demand of greater than 3,500 gallons per day") "is presumptively a major siting unless the CRM Directors determine otherwise by written consensus."

273

An MGM representative subsequently notified CRM by letter dated January 31, 1989, that the company proposed a new site in San Vicente. According to the letter, MGM intended to construct a dormitory to house forty-five workers. It planned to generate its own electricity, rely on catchment basins and wells for water, and to hook up to an adjacent sewer line to dispose of waste water. Based on this information, the company inquired whether it would have to submit an application for a permit.

In a letter dated March 8, 1989, the CRM administrator advised MGM that, based on the company's representations, the project was not a major siting:

> The water and sewer usage is below the amounts established in CRM major siting guidelines. The project will connect to the sewer. The number of workers, forty five, housed at the site is below the major siting guideline figure of fifty.
>
> As you know, however, our office continually monitors project sites. Should any of the facts change, CRM would have to review the project for possible jurisdiction.

In response to an inquiry from Govendo, the agency advised him of its decision concerning the project in a letter dated March 15, 1989: "[t]he factory, as now represented, no longer fits within the Major Siting Guidelines, nor is is [sic] located within an area of particular concern . . . [t]herefore, CRM has no authority to assert jurisdiction."

In a letter dated March 24, 1989, Govendo requested the agency to reconsider its decision:

> Simply stated, CRM is not following its own regulations about when a project should be declared a major siting. Although 45 workers may be living on the premises, it is

274

apparent that this factory will bring in more than 50 aliens altogether. Thus . . . it should be declared a major siting.

I shall file a lawsuit on April 13 unless CRM declares this project to be a major siting.

The record does not indicate any response by the agency.[5]

On April 13, 1989, Govendo filed an action against MGM and CRM officials in Commonwealth Superior Court.

Govendo asserted jurisdiction on several grounds, including 1 CMC § 3102 (the trial court's general jurisdictional statute), 2 CMC § 1542 (a statute permitting private actions against CRM, examined in part II, infra) and NMI Const. Art. I § 9.[6]

---

[5]According to CRM "Major Siting Guidelines":

Any project which meets any one or more of the criteria set forth below is presumptively a major siting unless the CRM Directors determine otherwise by a written consensus.

. . . .

C. Employees. Employment of over 50 fulltime equivalent employees.

. . . .

Appellee's Exhibit E.

[6]NMI Const. Art. I, § 9 provides as follows:

Each person has the right to a clean and healthful public environment in all areas, including the land, air, and water. Harmful and unnecessary noise pollution, and the storage of nuclear or radioactive material and the dumping or storage of any type of nuclear waste within the surface or submerged lands and waters of the Northern Mariana Islands, are prohibited except as provided by law.

Govendo subsequently also claimed jurisdiction pursuant to NMI Const. Art. X, § 9, which permits taxpayers to bring suits against the government "to enjoin the expenditure of public funds for other than public purposes or for a breach of fiduciary duty." He asserted that CRM officials breached their fiduciary duty by allowing the MGM factory to be built without declaring it a major

275

Govendo claimed that CRM violated statutory law and its regulations in failing to declare the MGM factory a major siting. Specifically, he asserted violation of 2 CMC § 1511(a)(4), (8), (14) and (15), which provide as follows:

(a) It is the coastal resources management policy of the Commonwealth to:

. . . .

(4) Plan for and manage any use or activity with the potential for causing a direct and significant impact on coastal resources. Significant adverse impacts shall be mitigated to the extent practicable;

. . . .

(8) Mitigate to the extent practicable adverse environmental impacts, including those on aquifers, beaches, estuaries and other coastal resources while developing an efficient and safe transportation system;

. . . .

(14) Not permit, to the extent practicable, development with the potential for causing significant adverse impact in fragile areas such as designated and potential historic and archeological sites, critical wildlife habitats, beaches, designated and potential pristine marine and terrestrial communities, limestone and volcanic forests, designated and potential mangrove stands and other wetlands;

(15) Manage ecologically significant resource areas for their contribution to marine productivity and value as wildlife habitats, and preserve the functions and integrity of reefs, marine meadows, salt ponds, mangroves and other significant natural

---

siting. The trial court ruled that neither 1 CMC § 3102 nor Art. I, § 9 conferred jurisdiction in this proceeding. It did not address the applicability of Art. X, § 9, and this issue has not been raised on appeal.

276

areas . . .

. . . .

Govendo also asserted violation of 2 CMC § 1512(a), (i) and (j):

The Coastal Resources Management Office has the following powers, functions and duties:

(a) To coordinate the planning and implementation of the coastal resources management policies of the Commonwealth government;

. . . .

(i) To ensure the consistency of permit decisions with the coastal resources management policies and regulations set forth in Sections 1511 and 1531;

(j) To coordinate the permit process . . .

. . . .

Finally, Govendo asserted violation of CRM regulations concerning issuance of major siting permits. He sought a declaratory judgment to the effect that the MGM factory was a major siting, an injunction ordering CRM to declare the factory a major siting and to follow regulatory procedures, and a preliminary injunction preventing MGM from building the factory until disposition of the action.

MGM denied most of Govendo's allegations and asserted three affirmative defenses: (1) lack of standing to bring the suit; (2) failure to state a claim for which relief could be granted; and (3) failure to comply with 1 CMC § 9112(b), a provision in the NMI Administrative Procedure Act permitting judicial review of agency action if filed within thirty days of the action.

The agency's response was similar; it asserted the first two

of MGM's affirmative defenses.

Immediately before trial on March 20, 1989, MGM orally moved to dismiss Govendo's suit for lack of subject matter jurisdiction.[7] The company argued that Govendo failed to establish a necessary element of a claim for relief under the CRM private action statute, 2 CMC § 1542.

After taking the motion under advisement, the court dismissed Govendo's action on April 2, 1990.

### The Superior Court Decision

Construing 2 CMC § 1542 to provide the basis for both subject matter jurisdiction and a claim for relief, the court interpreted MGM's motion as a motion to dismiss for failure to state a claim upon which relief could be granted. Com.R.Civ.P. 12(b)(6).[8]

---

[7]Pursuant to Com.R.Civ.P. 12(b)(1) (lack of jurisdiction over subject matter) and 12(h)(3) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action").

[8]This rule provides, in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
>
> . . . .
>
> (6) failure to state a claim upon which relief can be granted,
>
> . . . .
>
> A motion making any of these defenses shall be made before pleading if a further pleading is permitted. . . . .

"There is no reason for the court not to proceed on this premise. The fact that MGM has misnamed its motion is of no import to the court." Memorandum Decision at 5.

In analyzing 2 CMC § 1542, the court noted three requirements: (1) the plaintiff must be an interested person who (2) gave CRM 30 days written notice of (3) a breach of duties "specifically imposed by this Chapter."[9] MGM conceded that Govendo met the first two requirements but claimed that he failed to satisfy the third requirement.

The court briefly analyzed and rejected several statutory duties Govendo had cited to sustain his action.[10] It accorded its most detailed analysis to Govendo's claim that 2 CMC § 1512(a) (requiring the agency "[t]o coordinate the planning and implementation of the coastal resources managament policies by the

------

[9]The court noted that "Chapter" refers to the entire Coastal Resources Management Act, 2 CMC §§ 1501 et seq. For the full text of 2 CMC § 1542, see part II, infra.

[10]"[Govendo] cites nine 'duties' as being breached in paragraph eight of his complaint. A review of the cited 'duties' reveals that only three are . . . specifically imposed by the Act." Memorandum Decision at 6, 7. The duty imposed under 2 CMC § 1512(i) to ensure the consistency of permit decisions with statutory coastal resource management policies and regulations did not apply because "the agency action complained of . . . never progressed to the 'permit decision' stage and hence the § 1512(i) duty was never triggered." Id. at 7. The duty imposed under 2 CMC § 1512(j) to coordinate the permit process "[requires] CRM to ensure that all ministerial and other support services are available" for a five-agency review board, and that "all aspects of the review process" are coordinated. "This section has nothing to do with [Govendo's] cause of action." Id. As set forth infra, the court accorded closer analysis to Govendo's claim that CRM breached the duty "[t]o coordinate the planning and implementation of the coastal resources management policies by the government." 2 CMC § 1512(a).

279

government") mandated that CRM enforce its regulations:

> [Govendo] refers the court to 2 CMC § 1511(a)(1-23). This section contains 23 coastal resource management policies of the CNMI. Using these policies as guide-lines, [Govendo] correctly cites 2 CMC § 1531 as conferring on CRM the power to promulgate and enforce regulations. It is at this point that infirmities begin to appear in [Govendo's] argument. [He] concludes that "since it is the duty of CRM to enforce its own policies and since one of the duties is to promulgate its own rules and regulations, CRM has the duty to enforce its own regulations." [Govendo] utilizes a classic bootstrap argument to reach the conclusion that a duty "specific-ally imposed" by the Act is the duty to enforce its own regulations. This is just not so. Even if this were the case, there is no regulation that directs CRM to declare a garment factory a major siting. Without an express grant of legislative authority, this court cannot go beyond the specifically imposed duties of the Coastal Resources Management Act and use the policies enumerated in 2 CMC § 1511(a) as a bridge to graft a whole set of new, unintended duties onto the Act.

Memorandum Decision at 8.

The court expressed the opinion that 2 CMC § 1542 provides "the only avenue for judicial review of CRM decisions":

> The limited grant of jurisdiction to the court and the broad grant of discretionary leeway given to CRM under the Act evidences the legislature's intent to allow CRM to utilize its expertise in these highly specialized regulatory matters without being second guessed by the court.

Memorandum Decision at 9. The court thereupon granted the motion to dismiss.

Govendo appeals.

## II.

The sole issue Govendo raises on appeal is whether the trial court erred in ruling that 2 CMC § 1542 does not permit a private action against CRM to challenge the agency's determination that a

280

project is not a major siting.

Because the record indicates that the factory at issue had already been constructed at the time of trial, it is first necessary to determine whether the appeal is barred by mootness.[11] We also deem it appropriate to scrutinize the procedural law applied below.

## Mootness

As a general rule, in order to decide a case a court must be able to afford a petitioner the relief he or she seeks. "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Wong v. Board of Regents, University of Hawaii, 616 P.2d 201, 204 (Haw. 1980). Courts lack jurisdiction to decide moot cases. Id.[12]

_____

[11]The issue of mootness in the appeal of an administrative decision may be raised sua sponte by an appellate court. Sherrill v. Department of Transportation, 799 P.2d 836 (Ariz. 1990).

[12]Concerning the larger question of justiciability, we concur with the analysis of the Supreme Court of Hawaii:

> Though the courts of Hawaii are not subject to a "cases or controversies" limitation like that imposed upon the federal judiciary by Article III, § 2 of the United States Constitution, we nevertheless believe judicial power to resolve public disputes in a system of government where there is a separation of powers should be limited to those questions capable of resolution and presented in an adversary context.

Life of the Land v. Land Use Commission of the State of Hawaii, 623 P.2d 431, 438 (Haw. 1981). The courts of the NMI are likewise not

Since construction of the MGM factory has been completed, even if we were to decide that Govendo's appeal has merit it appears that we could not provide him effective relief. Cf. Kona Old Hawaiian Trails Group v. Lyman, 734 P.2d 161, 165 (Haw. 1987) ("[a]s long as all of the construction authorized under the shoreline management area . . . permit is not completed, the appeal presents an adversity of interests and possibly affords the appellant an effective remedy").

 Nonetheless, we believe that we may properly entertain this appeal:

> [I]n exceptional situations mootness is not an obstacle to the consideration of an appeal. In our opinion, "[w]hen the question involved affects the public interest, and it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made," an exception to the rule is justified.

Id., quoting Johnston v. Ing, 441 P.2d 138, 140 (Haw. 1968).[13] As in Lyman, the question presented in this case is of public concern, and, if it were to recur, would likely become moot before it could

---

subject to a "cases or controversies" limitation, but are limited by similar policy considerations. See Mafnas v. Commonwealth, No. 90-025, slip op. at 11, 12 (N.M.I. Aug. 30, 1991) (although federal constitutional strictures on standing are inapplicable in NMI courts, law of standing "must be applied with some view to realities as well as practicalities").

[13]See also Alaska Transportation Commission v. Gandia, 602 P.2d 402, 403 (Alaska 1979), quoting Doe v. State, 487 P.2d 47, 53 (Alaska 1971) ("[w]here the matter is one of grave public concern and is recurrent but is capable of evading review, we have undertaken review even though the question may be technically moot").

be determined on appeal. We shall therefore consider the merits.

## Motion to Dismiss

As noted above, the trial court interpreted MGM's motion as a motion to dismiss for failure to state a claim upon which relief could be granted, pursuant to Com.R.Civ.P. 12(b)(6). ▮ When considering such a motion, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Abramson v. Brownstein, 897 F.2d 389 (9th Cir. 1990) (analysis of counterpart federal rule).[14] Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id.

▮ We review de novo a dismissal for failure to state a claim under Com.R.Civ.P. 12(b)(6). Id.

## Govendo's Claim

▮ Because we are reviewing a dismissal pursuant to Com.R.Civ.P. 12(b)(6), we must accept as true Govendo's allegation that CRM violated its major siting regulations. Abramson, supra.[15]

Govendo contends that 2 CMC § 1542 grants interested persons

---

[14]We have previously ruled that it is appropriate to consult interpretation of counterpart federal rules when interpreting commonwealth procedural rules; interpretation of such rules can be highly persuasive. Tudela v. MPLC, No. 90-011 (N.M.I. June 7, 1990).

[15]Since Govendo's letter to CRM of March 24, 1989, alleging that the agency failed to follow its regulations was attached to his complaint as an exhibit, it may be regarded as part of the complaint. Com.R.Civ.P. 10(c). For the text of the "Major Siting Guidelines" CRM allegedly violated, see footnote 5, infra.

the right to bring an action to compel the agency to perform not only the duties specifically imposed under the Act, but also the duties imposed pursuant to regulations the agency has adopted.[16] MGM disputes this claim.[17]

Since the language of a statute is at issue, rules of statutory construction come into play. A basic principle of construction is that language must be given its plain meaning. Commonwealth v. Hasinto, No. 90-033 (N.M.I. Oct. 15, 1991). When language is clear, we will not construe it contrary to its plain meaning. Tudela v. MPLC, No. 90-011 (N.M.I. June 7, 1990).

Two CMC § 1542 provides, in full:

> Any interested person may initiate an action in the Commonwealth Trial Court to compel the performance of the duties specifically imposed by this Chapter upon the Coastal Resources Management Office or any coastal resources management regulatory agency. No action may be brought unless 30 days written notice has been given by the complainant to the Coastal Resources Management Office and any affected coastal resources management regulatory agencies regarding the duties which the complainant alleges have not been performed.

It is necessary to closely analyze the first sentence. "Any interested person" plainly confers broad standing. "[M]ay . . . compel the performance of . . . duties" indicates that injunctive

---

[16]We note that this case does not involve an appeal from a CRM permit decision. Cf. 2 CMC § 1541(b) (permitting aggrieved persons to appeal joint decisions of the coastal resources management regulatory agencies). It is, instead, an independent action.

[17]The company does not contest Govendo's compliance with the requirement under 2 CMC § 1542 that a complainant give thirty days written notice to the agency before filing suit. In fact, the record indicates that Govendo filed his action only twenty days after notifying CRM of his intention to do so if the agency did not declare the project a major siting. However, since this point has not been raised on appeal, we will not consider it.

relief may be granted to require performance of a _duty_--a "[m]andatory obligation to perform." Black's Law Dictionary 453 (5th Ed. 1979).

Our analysis hinges upon interpretation of the clause "duties specifically imposed by this Chapter." As enacted, this language originally specified the term "Act" instead of "Chapter." "Chapter" was substituted by the Law Revision Commission when the Act was codified as chapter five of Title 2 of the Commonwealth Code. Thus, 2 CMC § 1542 permits private actions to compel duties "specifically imposed" by the Act.

In this context, according to the plain meaning of "specifically",[18] a litigant may compel performance of only those duties that are _explicitly_ or _definitely_ set forth in the Act--i.e., statutory duties.

Given this analytical framework, the issue may be restated as follows: does 2 CMC § 1542 grant any interested person the right to compel CRM to enforce its major siting regulations if a construction proposal falls within the criteria specified in regulations?

The answer is no. Govendo's interpretation of the right of action permitted under 2 CMC § 1542 does not comport with the plain meaning of the statute. If the NMI legislature had intended to grant interested persons the right to bring a private action to compel CRM to perform _regulatory_ duties, it would not have chosen

_____

[18]"The adverb 'specifically' means in a specific manner; explicitly; particularly; definitely." 81 C.J.S. Specifically (1977); _see also_ Black's Law Dictionary 1254 (5th ed. 1979).

285

language that clearly indicates that such persons may only compel performance of <u>statutory</u> duties "specifically imposed" by the Act.[19]

Thus, the trial court was correct in dismissing Govendo's action for failure to state a claim upon which relief could be granted. It appears that CRM did not violate any statutory duty imposed by the Act.

We are not saying that CRM or any other NMI agency is immune from legal challenge if no means of judicial review of agency action is provided by statute.[20] If it clearly appears that an agency is not enforcing its regulations, limited judicial review may be available by way of extraordinary writ.[21] "It is generally accepted that an action in mandamus is proper to compel administrative agencies to exercise the powers entrusted to them,

---

[19]While it may be tempting to construe 2 CMC § 1542 as Govendo urges, we must apply the language according to its plain meaning, <u>Hasinto</u>, <u>supra</u>, and may not construe it contrary to that meaning. <u>Tudela</u>, <u>supra</u>. Only the legislature has the authority to amend the statute.

[20]"The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold [review]." <u>Holding's Little America v. Board of County Commissioners of Laramie County</u>, 670 P.2d 699, 703 (Wyo. 1983); <u>see also</u> <u>Johns v. Commercial Fisheries Entry Commission</u>, 699 P.2d 334 (Alaska 1985). Preclusion of judicial review may not be inferred except where there is a clear showing that the legislature intended it. <u>Morris v. Gressette</u>, 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977); <u>Legal Aid Society of Alameda County v. Brennan</u>, 608 F.2d 1319 (9th Cir. 1979), <u>cert. den. Chamber of Commerce of United States v. Legal Aid Society of Alameda County</u>, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980).

[21]"[C]ourts have inherent power to review the actions of administrative agencies . . . by extraordinary writ." <u>State ex rel. Bailey v. Grande</u>, 465 P.2d 334, 339 (Mont. 1970).

286

to perform ministerial acts and to enforce their rules and regulations." Tew v. City of Topeka Police and Fire Civil Service Commission, 697 P.2d 1279, 1283 (Kan. 1985).

III.

For the foregoing reasons, the Superior Court decision is AFFIRMED.

Entered this _____10ᵗʰ_____ day of September, 1991.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
JESUS C. BORJA, Associate Justice

_____
PEDRO M. ATALIG, Special Judge